**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| KRISTEN PLAISANCE, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 4:17-cv-03741 |
| v. | § | |
| | § | |
| JOHN D. SCHILLER, JR., et al., | § | |
| | § | |
| Defendants | § | |
| | § | |

---

### UHY LLP'S MOTION TO DISMISS

---

MCDERMOTT WILL & EMERY LLP

Nicole Figueroa, Attorney in Charge
TX Bar No. 24069716/ S.D. Tex. No. 1330127
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel.: 214.295.8062

Timothy Hoeffner (*Admitted Pro Hac Vice*)
340 Madison Avenue
New York, New York 10173
Tel.: 212.547.5595

Lawrence Wojcik (*Admitted Pro Hac Vice*)
Allyson Riemma (*Admitted Pro Hac Vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Tel.: 312.984.2057

**ATTORNEYS FOR DEFENDANT UHY LLP**

May 18, 2018

## TABLE OF CONTENTS

**Page**

I. SUMMARY OF THE ARGUMENT ..................................................................1

II. BACKGROUND ..........................................................................................2

III. LEGAL STANDARD ...................................................................................6

IV. ARGUMENT AND AUTHORITIES ...............................................................7

    A. Plaintiffs Fail to Plead a Claim for Violation of Section 10(b) and Rule 10b-5......7

        1. The Complaint Fails to Allege a Strong Inference of Scienter. ...................7

            a. The Complaint Fails to Plead UHY's Motive in Aiding the Alleged Fraud. ........................................................................8

            b. The Complaint Fails to Plead Conscious Recklessness. .................8

                i. EXXI's Restatement Does Not Support a Strong Inference of Scienter. ......................................................................8

                ii. The Alleged GAAP Violations Do Not Support a Strong Inference of Scienter. .........................................................12

                iii. The Complaint Fails to Plead UHY Knew of, or Consciously Disregarded, the Alleged Red Flags.............13

        2. Plaintiffs Fail to Allege a Material Misstatement of Fact.........................15

            a. Audit Opinions are Statements of Opinion....................................15

            b. The Complaint Fails to Plead that UHY Subjectively Believed its Audit Opinions were False............................................................16

            c. Plaintiffs Fail to Allege that UHY's Audit Opinions Omitted Material Facts..................................................................................17

    B. Plaintiffs Fail to Plead a Claim for Common Law Fraud. ....................................18

V. CONCLUSION AND PRAYER ....................................................................21

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*ABC Arbitrage Plaintiffs Group v. Tchuruk,*
   291 F.3d 336 (5th Cir. 2002) ...................................................................................18

*In re Azurix Corp. Sec. Litig.,*
   198 F. Supp. 2d 862 (S.D. Tex. 2002) ...................................................................18

*In re Baker Hughes Sec. Litig.,*
   136 F. Supp. 2d 630 (S.D. Tex. 2001) ...........................................................11, 12

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................................5

*In re: BP p.l.c. Sec. Litig.,*
   No. 4:10-MD-2185, 2016 WL 3090779 (S.D. Tex. May 31, 2016)......................15

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.,*
   497 F.3d 546 (5th Cir. 2007) ................................................................................8

*City of Pontiac Gen. Employees' Ret. Sys. v. Asar,*
   No. A-14-CA-1026-SS, 2016 WL 1322484 (W.D. Tex. Apr. 1, 2016) ................10

*Cogan v. Triad Am. Energy,*
   944 F. Supp. 1325 (S.D. Tex. 1996) ....................................................................19

*In re Dell Inc., Sec. Litig.,*
   591 F. Supp. 2d 877 (W.D. Tex. 2008).......................................................*passim*

*In re Doral Fin. Corp. Sec. Litig.,*
   563 F. Supp. 2d 461 (S.D.N.Y. 2008)....................................................................7

*In re Dynegy, Inc. Sec. Litig.,*
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ........................................................*passim*

*Fin. Acquisition Partners, LP v. Blackwell,*
   No. CIV.A.3:02-CV-1586-K, 2004 WL 2203253 (N.D. Tex. Sept. 29, 2004) ......13

*Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.,*
   565 F.3d 200 (5th Cir. 2009) ...............................................................................18

*In re Franklin Bank Corp. Sec. Litig.,*
   782 F. Supp. 2d 364 (S.D. Tex. 2011) ........................................................*passim*

*Hanson v. Frazer, LLP,*
   No. 12 Civ. 3166 (JSR), 2013 WL 5372749 (S.D.N.Y. Sept. 24, 2013)................16

ii

*Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*,
  302 F.3d 552 (5th Cir. 2002) ...................................................................18

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
  237 F. Supp. 3d 492 (S.D. Tex. 2017) ......................................................5

*Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*,
  387 F. Supp. 2d 691 (S.D. Tex. 2004) ...............................................18, 19

*Johnson v. CBD Energy Ltd.*,
  No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016)..........15

*Lovelace v. Software Spectrum Inc.*,
  78 F.3d 1015 (5th Cir. 1996) ...............................................................9, 11

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) ....................................................................11

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth
  Cnty. Ret. Ass'n v. MDC Partners, Inc.*,
  No. 15 CIV. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)...............14

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015) ................................................................. *passim*

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ...............................................................6, 14

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  245 F. Supp. 3d 870 (S.D. Tex. 2017) ......................................................17

*R2 Invs. LDC v. Phillips*,
  401 F.3d 638 (5th Cir. 2005) .......................................................................6

*Sam v. Wells Fargo Bank, N.A.*,
  No. 4:15-CV-03194, 2016 WL 4470111 (S.D. Tex. July 15, 2016) ........19

*Schott v. Nobilis Health Corp.*,
  211 F. Supp. 3d 936 (S.D. Tex. 2016) ................................................ *passim*

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
  365 F.3d 353 (5th Cir. 2004) ....................................................................18

*Stephens v. Halliburton Co.*,
  No. CIV.A.3:02-CV-1442-L, 2003 WL 22077752 (N.D. Tex. Sept. 5, 2003)......19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................2, 5, 6

*Varela v. Gonzales*,
    773 F.3d 704 (5th Cir. 2014) ................................................................................5

**Statutes, Regulations, and Rules**

Federal Rule of Civil Procedure 9(b).................................................................2, 18, 19

Federal Rule of Civil Procedure 12(b)(6) ....................................................................5

Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-
4(b).......................................................................................................... *passim*

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ...................................6

SEC Rule 10b-5, 17 CFR § 240.10b–5........................................................................6

Defendant UHY LLP ("UHY") respectfully files this motion to dismiss Plaintiffs' Amended Complaint for Violation of the Federal Securities Law and Common Law Fraud (ECF No. 97) ("the Amended Complaint").

## I. SUMMARY OF THE ARGUMENT

The Amended Complaint centers around the alleged "lavish spending" habits of the Chief Executive Officer, Defendant John D. Schiller, Jr. ("Defendant Schiller") of Energy XXI Ltd. ("EXXI" or "the Company"). These allegations do not relate to any alleged misstatement in the financial statements of EXXI and have no connection, whatsoever, to the Company's independent outside auditors, UHY, and fail to plead a claim for securities fraud or common law fraud against UHY.

Because the focus of the securities fraud claim bears no relationship to UHY, Plaintiffs are left only with the fact that EXXI restated its financial statements for fiscal years 2011 through 2014. Yet, the Amended Complaint pleads no supporting facts and fails to identify any "red flags" that should have placed UHY on notice of any alleged fraudulent conduct. Absent supporting facts, a restatement, by itself, does not establish a strong inference of scienter. *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 953 (S.D. Tex. 2016). Instead, courts in this Circuit have recognized the high bar for pleading intent to defraud by auditors. Here, the Amended Complaint fails to plead any *facts* demonstrating that UHY's audits "amounted to no audit at all." *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 402 (S.D. Tex. 2011); *see also In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 882 (S.D. Tex. 2004) (Judge Lake) (holding plaintiffs are required to plead specific facts giving rise to a strong inference of scienter). Under case law in this Circuit, Plaintiffs' claim pursuant to Section 10(b) of the Securities Exchange Act of 1934 should be dismissed.

1

Plaintiffs' common law fraud claim also fails for the same reasons discussed above. The Amended Complaint fails to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"), because there are no facts demonstrating UHY's fraudulent intent. Nor is there any allegation in the Amended Complaint that Plaintiffs relied upon UHY's audit opinions. Absent any particularized facts pleading UHY's fraudulent intent, Plaintiffs' common law fraud claim should also be dismissed.

The Director Defendants[1] have set forth in detail additional arguments that apply equally to UHY. The arguments in the motion to dismiss of the Director Defendants are adopted for purposes of this motion to dismiss.[2]

## II.    BACKGROUND[3]

As EXXI's independent outside auditor, UHY was engaged to audit the financial statements of the Company and its subsidiaries, and to express an opinion on whether those financial statements fairly presented the financial condition of the Company. (Am Compl. ¶ 85). Specifically, UHY was engaged to audit the financial statements of EXXI for the years ended June 30, 2011, 2012, 2013, and 2014. (*Id.*) Each audit opinion contained UHY's opinion that it audited the Company's financial statements "in accordance with the standards of the Public

---

[1] Defendants Hill A. Feinberg, William Colvin, David M. Dunwoody, Cornelius Dupré II, Kevin Flannery, Scott A. Griffiths, and James LaChance (collectively, the "Director Defendants") together with John D. Schiller, D. West Griffin, and Norman M.K. Louie (collectively, the "Individual Defendants") filed motions to dismiss the Amended Complaint (collectively "the Director Defendants' Motion to Dismiss").

[2] UHY incorporates by reference the arguments and authorities presented in the Director Defendants' Motion to Dismiss. With respect to the securities fraud claim, UHY incorporates the arguments regarding group pleading, loss causation, and the statute of repose. With respect to the common law fraud claim, UHY incorporates the argument regarding Plaintiffs' impermissible holder claim.

[3] Well-pleaded factual allegations are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by other allegations or documents incorporated by reference, including documents of which the Court can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Public statements challenged as false or misleading under the securities laws must be evaluated "fairly and in context" rather than "in a vacuum." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1330, 1332 (2015).

Company Accounting Oversight Board" (the "PCAOB") and "plan[ned] and perform[ed] the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects." (*Id*. at ¶¶ 92-93). Each year, UHY issued unqualified audit opinions, stating, "*In our opinion*, Energy XXI (Bermuda) Limited and subsidiaries maintained, in all material respects, effective internal control over financial reporting." (*Id*. at ¶ 94) (emphasis added). Specifically, each audit opinion stated:

> We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Energy XXI (Bermuda) Limited and subsidiaries as of June 30, 2011 and 2010, and the related consolidated statements of operations, stockholders' equity and cash flows for each of the three fiscal years in the period ended June 30, 2011, and our report dated August 15, 2011 expressed an unqualified opinion on those consolidated financial statements;

> We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Energy XXI (Bermuda) Limited and subsidiaries as of June 30, 2012 and 2011, and the related consolidated statements of operations, stockholders' equity and cash flows for each of the three fiscal years in the period ended June 30, 2012, and our report dated August 9, 2012 expressed an unqualified opinion on those consolidated financial statements;

> We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Energy XXI (Bermuda) Limited and subsidiaries as of June 30, 2013 and 2012, and the related consolidated statements of income, comprehensive income (loss), stockholders' equity and cash flows for each of the three fiscal years in the period ended June 30, 2013, and our report dated August 21, 2013 expressed an unqualified opinion on those consolidated financial statements; and

> We have also audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the consolidated balance sheets of Energy XXI (Bermuda) Limited and subsidiaries as of June 30, 2014 and 2013, and the related consolidated statements of income, comprehensive income (loss), stockholders' equity and cash flows for each of the three fiscal years in the period ended June 30, 2014, and our report dated August 25, 2014 expressed an unqualified opinion on those consolidated financial statements.

(*Id*. at ¶¶ 95-98).

Because of the volatile nature of the oil industry, U.S. generally accepted accounting principles ("GAAP") and PCAOB auditing standards permit companies, including EXXI, to use cash flow hedge accounting. (*Id*. at ¶ 231). Under cash flow hedge accounting, EXXI could record unrealized gains and losses on its derivative contracts in its accumulated other comprehensive income as part of the consolidated balance sheet. (*Id*.) The losses or gains on the hedge contracts would be reclassified as revenues in the production month when the hedge contracts settled. (*Id*.) ASC Topic 815, "Derivatives and Hedging" ("ASC 815"), is the applicable auditing standard for cash flow hedge accounting. (*Id*. at ¶ 77). ASC 815 lists the requirements for cash flow hedge accounting, including among others, adequate documentation of the hedged transactions. (*Id*.) However, ASC 815 does not specify the type or form of documentation required. In fact, the Securities and Exchange Commission (the "SEC") has acknowledged it accepts a variety of approaches to the documentation requirement under ASC 815.[4] As a result, the auditor must apply his or her judgment in evaluating the sufficiency of the documentation. Here, UHY exercised its reasonable judgment and determined that EXXI's documentation of its hedged transactions was sufficient under ASC 815. Specifically, UHY concluded that it was sufficient for EXXI to designate hedged transactions by month, because the price transacted per barrel of oil was based on the average price per oil barrel that month.

In December 2014, BDO USA, LLP ("BDO") acquired the assets and personnel of UHY's Texas offices, including UHY's Houston office. (*Id*. at ¶ 63). Thereafter, UHY resigned as EXXI's auditor and BDO became the successor auditor for the Company. (*Id*. at ¶ 244). During BDO's audit of EXXI's financial statements for the year ended June 30, 2015, BDO determined that, in its judgment, EXXI's documentation for hedged transactions did not meet the

---

[4] *See* Remarks by Joseph D. McGrath at the AICPA National Conference on Current SEC and PCAOB Developments in 2006; available at http:// www.sec.gov/news/speech/2006/spch121106jgm.htm.

specificity then required under ASC 815, and the management of EXXI agreed. (*Id.* at ¶¶ 252-253). As stated in the Form 8-K dated September 2, 2015, "the formal hedge documentation lacked specificity of the hedged items . . ." (Energy XXI (Bermuda) Ltd., Form 8-K, Sept. 2, 2015 ("2015 8-K"), at 2, attached as Exhibit A ("Ex. A")).  As a result, the unrealized hedging gains and losses had to be reclassified and shown in the Company's consolidated statements of operations as a component of earnings, rather than on the consolidated balance sheets. (Am. Compl. at ¶ 253-254). Because of this reclassification, EXXI restated its financial statements for the years ended June 30, 2011, 2012, 2013, and 2014. (*Id.* at ¶ 253). Although the reclassification of the hedged transactions impacted other areas of EXXI's financial statements, the impact on the Company's income was minimal because the losses from the hedged transactions were already reported in the Company's comprehensive statement of income and were being re-reported through the Company's statements of operations.

On April 16, 2016, EXXI filed for Chapter 11 bankruptcy in the Southern District of Texas. (*Id.* at ¶ 80). Plaintiffs then commenced this lawsuit in the District Court for the Southern District of New York on September 6, 2017. Defendants, including UHY, moved to transfer the case to this Court. On December 12, 2017 the District Court for the Southern District of New York granted Defendants' motion and transferred the case to this Court. Defendants moved to dismiss the Complaint on February 12, 2018. In response to Defendants' motions to dismiss, Plaintiffs filed the Amended Complaint on March 29, 2018.[5] Defendants now move to dismiss the Amended Complaint.

---

[5] The Amended Complaint was procedurally improper because it was neither filed within the time allowed for amendments as a matter of course under Federal Rule of Civil Procedure 15(a)(1) nor with Defendants' written consent or with the Court's leave, as required under Federal Rule of Civil Procedure 15(a)(2). Nevertheless, in the interest of efficiency, UHY is moving to dismiss the Amended Complaint. For the reasons discussed below, the Amended Complaint fails to cure the pleading infirmities in Plaintiffs' original complaint.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court "need not accept . . . conclusory allegations as true." *Varela v. Gonzales*, 773 F.3d 704, 710 (5th Cir. 2014) (internal citation omitted). Well-pleaded allegations are assumed to be true solely for purposes of this motion to dismiss and only to the extent they are not contradicted by other allegations or documents incorporated by reference, including filings with the SEC, of which the Court can take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492 (S.D. Tex. 2017) (taking judicial notice of SEC filings by off-shore energy services company in securities fraud action).

To state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation (or omission); (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, "i.e., a causal connection between the material misrepresentation and the loss." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015). Under the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a securities fraud complaint must specify each alleged misstatement or omission, explain why it is false or misleading, and "state with particularity facts giving rise to a strong inference that the defendant acted" with a fraudulent state of mind or scienter. *Tellabs,* 551 U.S. at 321 (citing PSLRA, 15 U.S.C. § 78u-4(b)(1)- (2)). A complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

"In order to survive a motion to dismiss, a plaintiff alleging a Section 10(b)/Rule 10b–5 claim must . . . plead *specific facts* giving rise to a 'strong inference' of scienter." *In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 882 (S.D. Tex. 2004) (Judge Lake) (emphasis added) (internal citation omitted). Scienter requires "an intent to deceive, manipulate or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 643 (5th Cir. 2005).

### IV.    ARGUMENT AND AUTHORITIES

**A.    Plaintiffs Fail to Plead a Claim for Violation of Section 10(b) and Rule 10b-5.**

The Amended Complaint does not cure the deficiencies in Plaintiffs' original complaint. Yet again, the Amended Complaint fails to allege any facts supporting its securities fraud claim against UHY. Plaintiffs' only specific allegation with respect to UHY is that UHY's "unqualified audit reports were materially false and misleading." (Am. Compl. ¶ 100). Plaintiffs fail to plead any facts connecting UHY to the alleged fraud committed by "*Defendants*." (*Id.* at ¶¶ 285-289) (emphasis added). Because the Amended Complaint fails to plead a strong inference of scienter or loss causation, the securities fraud claim should be dismissed.

**1.    The Amended Complaint Fails to Allege a Strong Inference of Scienter.**

Absent "specific facts giving rise to a strong inference of scienter," the Amended Complaint should be dismissed. *In re Dynegy*, 339 F. Supp. 2d at 882 (Judge Lake). Here, the Amended Complaint fails to plead that UHY's audits of EXXI's financial statements amounted to "no audit at all," and should be dismissed. *In re Franklin Bank Corp. Sec. Litig.*, 782 F. Supp. 2d 364, 402 (S.D. Tex. 2011).

      **a.**    **The Amended Complaint Fails to Plead UHY's Motive in Aiding the Alleged Fraud.**

The Amended Complaint does not allege that UHY had a motive to commit fraud. Plaintiffs' sole attempt to allege motive may be the unremarkable allegation that UHY received professional fees in exchange for auditing EXXI's financial statements.  (*See* Am. Compl. ¶ 54). But the fact that an auditor is compensated "is wholly insufficient to show [an auditor's] scienter." *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008).

      **b.**    **The Amended Complaint Fails to Plead Conscious Recklessness.**

What is required, but is absent here, are *specific facts* supporting a "strong inference" of scienter. *In re Dynegy*, 339 F. Supp. 2d at 882 (Judge Lake); *see also In re Dell Inc., Sec. Litig.*, 591 F. Supp. 2d 877, 899-900 (W.D. Tex. 2008) (Plaintiffs must allege "a mental state so culpable that it approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company.")

Where the securities fraud claim is against a company's "outside auditor" the pleading standard is "especially stringent." *In re Franklin*, 782 F. Supp. 2d at 402; *see also In re Dell*, 591 F. Supp. 2d at 899 (internal citation omitted). The Amended Complaint must allege that "the audit amounted to no audit at all, or there was an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re Franklin*, 782 F. Supp. 2d at 402.

      **i.**    **EXXI's Restatement Does Not Support a Strong Inference of Scienter.**

The fact that EXXI's financial statements were restated does not allege a strong inference of scienter. Plaintiffs allege, without pleading any factual support, that because EXXI's financial statements were restated UHY acted with scienter. (*See* Am. Compl. ¶¶ 235, 241-243). The fact

that a company's financial statements were restated does not, by itself, support a strong inference of scienter. *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 953 (S.D. Tex. 2016); *see also Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555 (5th Cir. 2007) ("If we were to accept this proffered interpretation of Sarbanes–Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.")

The Amended Complaint alleges that the restatements of EXXI's financial statements were "necessary to correct the Company's method of accounting for crude oil and natural gas hedging to reflect unrealized hedging gains and losses in its consolidated statements of operations as a component of earnings rather than on its consolidated balance sheets." (Am. Compl. ¶ 246). The Complaint also alleges that "EXXI and BDO determined that the Company's hedge documentation did not specify the hedged items and, therefore, the designations failed to meet the documentation requirements for cash flow hedge accounting," and as a result, EXXI "was required to restate its previously issued consolidated financial statements to reflect the unrealized recognition of gains and losses." (*Id.* at ¶¶ 252-253).

That BDO reached a different judgment regarding the level of detail required for the documentation of hedged transactions does not establish fraudulent intent on the part of UHY. GAAP "is a term of art encompassing a wide range of acceptable procedures, such that an ethical, reasonably diligent accountant may choose to apply any of a variety of acceptable accounting procedures when that accountant prepares a financial statement." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1021 (5th Cir. 1996). Conclusory allegations that UHY's audit opinions were false because EXXI's financial statements were restated due to EXXI's and

BDO's conclusion that the company lacked the appropriate hedge documentation are insufficient to establish scienter with respect to UHY. *See In re Franklin*, 782 F. Supp. 2d at 402 (dismissing securities fraud claim where complaint merely alleged that Deloitte's statements were false because company's financial statements were restated two years later when accounting deficiencies were discovered). What the Amended Complaint does not allege is how UHY's procedures regarding the documentation of the hedged transactions amounted to "no audit at all." *Id*; *see also In re Dell*, 591 F. Supp. 2d at 899-900. Nor does the Amended Complaint allege specific facts demonstrating the errors in UHY's auditing procedures. *See In re Dynegy*, 339 F. Supp. 2d at 894 (Judge Lake) (dismissing securities fraud claims where Plaintiffs failed to identify the specific trades, including dollar amount, that were incorrectly accounted for as hedge transactions, or why the accounting treatment as hedge transactions was incorrect).

Indeed, the only new language relating to UHY included in the Amended Complaint is the allegation that "the Company disclosed that it had no documentation regarding what was being hedged," and that UHY "failed to perform necessary fieldwork to validate the existence of documentation required by ASC 815 . . ."(Am. Compl. ¶¶ 235, 241). This new allegation does nothing to support a securities fraud claim. As explained in the Company's SEC filing describing the restatement issue, the Company determined that "the formal hedge documentation *lacked specificity*" and thus "failed to meet hedge fund documentation requirements for cash flow hedge accounting treatment."  (*See* Ex. A) (emphasis added). Thus, rather than a complete lack of audit documentation or procedures, the issue involved only a lack of "formal documentation" including the necessary "specificity." (*Id.*)

In determining whether a restatement supports a strong inference of scienter, this Court considers the magnitude of the restatement, "the simplicity and obviousness of the misapplied

rules," and the alleged motives for "misapplying" the accounting principles. *Schott*, 211 F. Supp. 3d at 953. These other factors must "strongly" support the inference of scienter. *Id.*

Here, the magnitude of the restatement was minimal. While reclassifying the losses on the hedged transactions as a component of earnings impacted other areas of the Company's financial statements, the total impact on EXXI's net income was minimal. For fiscal years 2012 and 2013 the restated net income was *higher* than the originally reported net income.[6] (*See* Energy XXI (Bermuda) Ltd., Form 10-K for the fiscal year ended June 30, 2014, at 47, attached as Exhibit B ("Ex. B"); Energy XXI (Bermuda) Ltd., Form 10-K for the fiscal year ended June 30, 2015 ("2015 10-K"), at 51, attached as Exhibit C ("Ex. C")).[7] Where, as here, the restatement *increased* net income, the restatement does not establish a strong inference of scienter. *See City of Pontiac Gen. Employees' Ret. Sys. v. Asar*, No. A-14-CA-1026-SS, 2016 WL 1322484, at *11 (W.D. Tex. Apr. 1, 2016) (finding no inference of scienter where restatement of company's financials increased the company's net income by fourteen percent for one quarter).

Courts consider the complexity of the alleged violated accounting principle when evaluating whether a restatement, when viewed in totality of the allegations, suggests an inference of scienter. *In re Dell Inc.*, 591 F. Supp.2d at 903. Here, the applicable auditing standard for the documentation of hedged transactions is complex, and requires the auditor to make subjective judgments. In particular, the auditor is required to make subjective judgments concerning the adequacy of the documentation supporting the hedging transactions. Reasonable auditors can reach different judgments about the adequacy of documentation for hedged

---

[6] For fiscal year 2012, the restated net income was $478,808,000, whereas the originally reported net income was $335,827,000. Thus, the restated net income was over $100 million *higher*. (*See* Ex. B at 47; Ex. C at 51). For fiscal year 2013, the restated net income was $180,783,000, whereas the originally reported net income was $162,081,000, resulting in an increase of approximately $18 million to net income. (*Id.*)

[7] Due to the length of EXXI's financial statements, UHY has excerpted and attached only the pages cited in this motion to dismiss.

transactions. Moreover, the Amended Complaint pleads no facts demonstrating that UHY had any motive to misapply the auditing standard for cash flow hedge accounting. Where, as here, the alleged violated accounting principle is complex and there is no alleged motive for misapplying the principle, the mere fact of a restatement is insufficient to establish scienter. *Id.*

### ii.     The Alleged GAAP Violations Do Not Support a Strong Inference of Scienter.

Nor do the alleged GAAP violations support a strong inference of scienter. "The mere publication of inaccurate accounting figures or failure to follow GAAP, without more, does not establish scienter." *In re Dynegy*, 339 F. Supp. 2d at 883 (Judge Lake); *see also Lovelace*, 78 F. 3d at 1020 ("The party must know that it is publishing materially false information or the party must be severely reckless in publishing such information."); *Melder v. Morris*, 27 F.3d 1097, 1103 (5th Cir. 1994) ("[P]laintiffs' boilerplate averments that the accountants violated particular accounting standards are not, without more, sufficient to support inferences of fraud."); *In re Baker Hughes Sec. Litig.*, 136 F. Supp. 2d 630, 649 (S.D. Tex. 2001) ("A violation of GAAP, standing alone, does not satisfy the pleading standards established by the PSLRA.") (internal citation omitted).

The Amended Complaint alleges that EXXI's financial statements did not comply with GAAP because they failed to disclose Defendant Schiller's personal loans. (Am. Compl. ¶ 102). However, the Amended Complaint merely lists the accounting principles and standards that were allegedly violated. (*Id.* at ¶ 101). The Amended Complaint's laundry list of accounting principles and standards does not contain a single particularized fact regarding UHY. (*Id.*) Furthermore, the Amended Complaint fails to plead any facts demonstrating that UHY's audit procedures for related party transactions amounted to "no audit at all." *In re Franklin*, 782 F. Supp. 2d at 402; *see also In re Baker Hughes*, 136 F. Supp. 2d at 649 (dismissing securities fraud complaint

12

where plaintiffs failed to plead "particularized facts relating to the specific way in which the Defendants' accounting strayed from GAAP.") The Amended Complaint makes no allegations regarding UHY's audit procedures, and does not even attempt to plead how the alleged GAAP violations relating to these loans support a strong inference of scienter. Plaintiffs' conclusory argument is that because Defendant Schiller's personal loans were not disclosed in the financial statements, UHY's audits must have violated GAAP and UHY must have acted with scienter. (*See* Am. Compl. ¶¶ 102-103). Yet, Plaintiffs fail to plead any facts demonstrating that UHY knew "it [was] publishing materially false information" or was "severely reckless in publishing information." *Schott*, 211 F. Supp. 3d at 953. In fact, the allegations in the Amended Complaint cut against a strong inference of scienter. The Amended Complaint alleges that Defendant Schiller concealed the related party loans and that the Company's Board of Directors ("the Board") did not discover the related party loans until October 2015, *after* UHY issued its audit opinions. (*See* Am. Compl. ¶¶ 3, 22, 24, 44).

### iii. The Amended Complaint Fails to Plead UHY Knew of, or Consciously Disregarded, the Alleged Red Flags.

In an attempt to manufacture a strong inference of scienter, Plaintiffs allege that UHY was aware of, or should have been aware of, red flags. Yet, the Amended Complaint does not plead any facts demonstrating that UHY knew of, or consciously disregarded, the alleged red flags.

The only allegation in the Amended Complaint that vaguely relates to alleged red flags is that UHY's audit was not conducted in accordance with PCAOB Standard AU § 316, which sets forth certain fraud risks, including: "(a) unsupported balances or transactions; (b) inconsistent, vague or implausible responses from management arising from inquiries or analytical procedures; (c) lack of timely and appropriate documents; (d) missing documents; and (e)

evasive or unreasonable responses of management to audit reports." (*Id*. at ¶ 103). However, the Amended Complaint fails to link any of these generalized allegations to particularized facts concerning what UHY knew and disregarded. *In re Dell*, 591 F. Supp. 2d at 905. Plaintiffs cannot rely "on boilerplate red flags present in almost every securities fraud action" to allege scienter. *Id*.

Moreover, "[r]ed flags are those facts *which come to the attention of the auditor* which would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *Id*. at 904 (emphasis added). Nowhere does the Amended Complaint allege that UHY knew of, or consciously disregarded, the alleged GAAP violations or of the existence of Defendant Schiller's personal loans. Absent such particularized facts, the Amended Complaint fails to plead a strong inference of scienter. *See Schott*, 211 F. Supp. 3d at 954-55 (dismissing securities fraud claim where plaintiff failed to allege "media reports or internal company documents that would permit the court to infer" that the defendants knew of, or recklessly disregarded, evidence of improper accounting); *see also In re Dell*, 591 F. Supp. 2d at 904-05 (dismissing securities fraud claim where plaintiffs did not plead "specific facts indicating PwC knew or had reason to think the adjustments were being made fraudulently"); *Fin. Acquisition Partners, LP v. Blackwell*, No. CIV.A.3:02-CV-1586-K, 2004 WL 2203253, at *22-23 (N.D. Tex. Sept. 29, 2004) (dismissing securities fraud claim where plaintiffs did not allege facts showing that Deloitte "was aware or was severely reckless in not being aware of" the risk of default on a $50 million loan).

With respect to Defendant Schiller's personal loans, any alleged red flags were not discovered until *after* UHY's audit opinions were issued. (*See* Am. Compl. ¶¶ 3, 22, 24, 44). "[R]ed flags add little inference of scienter" when the information "become[s] knowable" only

after the alleged misrepresentations. *Owens*, 789 F.3d at 540. The Amended Complaint fails to allege any facts demonstrating that UHY knew of, or consciously disregarded, red flags that would have alerted them to Defendant Schiller's personal loans.

Although not explicitly alleged as a red flag, the Amended Complaint seems to plead that Defendant Schiller's "lavish lifestyle" and EXXI's payment of certain personal expenses was a red flag with respect to his personal loans. (*See* Am. Compl. ¶ 28 ("As evidenced by Defendant Schiller's extraordinary loans from some of EXXI's vendors and from Defendant Louie . . . Schiller's lifestyle far exceeded his actual wealth."); *see also id.* at ¶¶ 29-32). Plaintiffs do not allege that UHY's audit opinions made any statements regarding Defendant Schiller's personal expenses or how any alleged statements were false. Absent false statements regarding Defendant Schiller's personal expenses, these allegations do not plead scienter. *See N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan & Plymouth Cnty. Ret. Ass'n v. MDC Partners, Inc.*, No. 15 CIV. 6034 (RJS), 2016 WL 5794774, at *14 (S.D.N.Y. Sept. 30, 2016) (dismissing securities fraud claim where complaint did not allege company's financial statements where false due to improper reimbursements of CEO's expenses). Because the Amended Complaint fails to plead any facts demonstrating that UHY knew of, or consciously disregarded, the alleged red flags, the alleged red flags fail to plead a strong inference of scienter.

### 2. Plaintiffs Fail to Allege a Material Misstatement of Fact.

#### a. Audit Opinions are Statements of Opinion.

The Amended Complaint also fails to plead an actionable misstatement or omission of fact arising from UHY's audit opinions. After the United States Supreme Court's opinion in *Omnicare*, this Court affirmed that audit reports are statements of opinion, not fact. *See In re: BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 3090779, at *10 (S.D. Tex. May 31, 2016) (holding *Omnicare* applies to Section 10(b) securities fraud claims); *see also Johnson v. CBD*

*Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) ("an auditor's statement regarding compliance inherently [is] one of opinion.") (internal citation omitted). Under *Omnicare*, an opinion is only actionable if it: (1) "falsely describe[] [the speaker's] state of mind," (2) contains "embedded statements of [untrue material] facts," or (3) omits material facts "whose omission makes the opinion statement[s] at issue misleading[.]" 135 S. Ct. at 1326-27, 1332. Accordingly, Plaintiffs are required to plead *specific facts* demonstrating that UHY subjectively believed its audit opinions were false or omitted to disclose material information that it possessed that conflicted with its audit opinions. Plaintiffs fail to meet the *Omnicare* standard. The only specific allegation directed to UHY in the Amended Complaint is that UHY's audit opinions were "materially false and misleading because . . . (a) the audits were not conducted in accordance with PCAOB standards; and (b) EXXI's financial statements did not fairly present the Company's true financial position." (Am. Compl. ¶ 100). These conclusory allegations fall far below the *Omnicare* standard for pleading a material misstatement of fact and the heightened pleading requirements of the PSLRA.

> **b.      The Amended Complaint Fails to Plead that UHY Subjectively Believed its Audit Opinions were False.**

Plaintiffs do not allege that UHY disbelieved its stated audit opinions regarding EXXI's financial statements at the time they were issued, nor do they allege any facts calling into question UHY's subjective belief in the accuracy of its audit opinions at the time those opinions were issued. Instead, Plaintiffs ask this Court to draw the (implausible) inference of subjective disbelief based on the restatement of EXXI's financial statements and Defendant Schiller's undisclosed personal loans. (*Id.*) These conclusory allegations do not establish that UHY did not honestly believe its audits were conducted in accordance with PCAOB standards or that EXXI's financial statements fairly presented the company's financial position.

16

The Amended Complaint alleges that UHY's audit opinions were "materially false and misleading" because "(a) the audits were not conducted in accordance with PCAOB standards; and (b) EXXI's financial statements did not fairly present the Company's true financial position . . ." (*Id.*) Instead of facts, the Amended Complaint merely lists the applicable accounting rules and regulations which require the disclosure of material related party transactions and concludes that because EXXI's financial statements did not disclose Defendant Schiller's personal loans, "the audit was not conducted in accordance with PCAOB standards." (*Id.* at ¶¶ 101-103). What is required, and what is absent here, are allegations that UHY did not believe its audits complied with PCAOB standards. *See Hanson v. Frazer, LLP*, No. 12 Civ. 3166 (JSR), 2013 WL 5372749, at *6 (S.D.N.Y. Sept. 24, 2013) (granting motion to dismiss where Complaint did not allege that auditor knew loans were related party transactions). There is no allegation that UHY had knowledge of the related party loans at the time the audit opinions were issued. Because the allegations in the Amended Complaint fail to plead that UHY did not honestly believe its audit opinions were conducted in accordance with PCAOB standards or that the financial statements fairly presented EXXI's financial position, the securities fraud claim against UHY must be dismissed.

      **c.**      **Plaintiffs Fail to Allege that UHY's Audit Opinions Omitted Material Facts.**

The Amended Complaint fails to tie any alleged omissions to UHY specifically. Rather, the Amended Complaint makes the conclusory allegation that "[t]he Company's financial statements did not comport with GAAP as they failed to disclose the millions of dollars in loans to Defendant Schiller from EXXI's vendors and from a confederate on the Board who was also an affiliate of one of the Company's largest shareholders." (Am. Compl. ¶ 102). That allegation tells this Court nothing about what facts UHY allegedly omitted from its audits opinions. To

plead a material omission under *Omnicare*, Plaintiffs are required to identify *specific facts* omitted from UHY's audit opinions *and* that UHY knew of these facts at the time the audit opinions were issued. *See Omnicare*, 135 S. Ct. at 1332 (holding "conclusory assertions" are insufficient to allege the omission of a material fact); *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 905 (S.D. Tex. 2017) ("The issue is whether the plaintiffs have alleged facts that show that [] defendants knew, but omitted to include in their statements, material facts contrary to what a reasonable investor would believe from reading or hearing their statements.") That is "no small task for the investor." *Omnicare*, 135 S. Ct. at 1332. Plaintiffs cannot "circumvent the particularity and materiality requirements of a § 10(b) claim by alleging in general terms that the defendant . . . failed to disclose some fact cutting the other way." *In re Plains*, 245 F. Supp. 3d at 892 (internal citation omitted).

Plaintiffs do not identify specific facts omitted from UHY's audit opinions. With respect to the generic allegation regarding Defendant Schiller's personal loans, Plaintiffs do not allege that UHY knew of the loans at the time the audit opinions were issued. In fact, the Amended Complaint contradicts any such allegation because the Amended Complaint concedes that Defendant Schiller's personal loans were not discovered by the Board until October 2015, *after* UHY issued its audit opinions. (*See* Am. Compl. ¶¶ 3, 22, 24, 44). Thus, the Amended Complaint fails to meet the *Omnicare* standard for a material omission.

Based on the above, Plaintiffs fail to allege a securities fraud claim against UHY, and the claim should be dismissed.

**B.      Plaintiffs Fail to Plead a Claim for Common Law Fraud.**

Plaintiffs' common law fraud claim fails for the same reasons that their Section 10(b) claim fails. The Amended Complaint fails to allege misrepresentations by UHY made with fraudulent intent that caused injury.

To plead common law fraud, Plaintiffs must allege: "(1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 212-13 (5th Cir. 2009) (*citing Jag Media Holdings Inc. v. A.G. Edwards & Sons Inc.*, 387 F. Supp. 2d 691, 709 (S.D. Tex. 2004)). Claims of common law fraud are subject to the heightened pleading standard for fraud in Rule 9(b). *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004); *see also In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 879-80 (S.D. Tex. 2002) (Judge Lake). The Fifth Circuit adheres to a strict interpretation of Rule 9(b), requiring "a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002). The Fifth Circuit has commented that the Rule 9(b) standard is the same as the stringent pleading requirements set out in the PSLRA. *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (Rule 9(b) requires a plaintiff to plead fraud "with particularity" which is the "standard required by the PSLRA.") Plaintiffs' allegations fail to meet this heightened pleading standard.

As discussed above, the Amended Complaint fails to plead UHY's fraudulent intent. There are no facts alleging that UHY did not honestly believe its audit was conducted in accordance with PCAOB standards or that EXXI's financial statements fairly presented the company's financial position. Rule 9(b) requires facts showing fraudulent intent, and merely alleging UHY violated GAAP is insufficient. *See Jag Media Holdings*, 387 F. Supp. 2d at 709 (failure to plead facts "showing" fraudulent intent negates a claim for common law fraud);

*Cogan v. Triad Am. Energy*, 944 F. Supp. 1325, 1335 (S.D. Tex. 1996) (dismissing common law fraud claim where complaint alleged Deloitte violated accounting guidelines and participated in fraud to obtain auditing fees); *see also Stephens v. Halliburton Co.*, No. CIV.A.3:02-CV-1442-L, 2003 WL 22077752, at *9 (N.D. Tex. Sept. 5, 2003) (complaint failed to meet heightened pleading requirements of Rule 9(b) where complaint failed to allege facts "to support their belief that Defendants knew, or had a reason to believe, that their treatment of the unresolved claims and change orders violated GAAP.")

Moreover, the Amended Complaint does not plead facts showing that Plaintiffs relied upon UHY's audit opinions. Plaintiffs make the conclusory allegation that "[i]n reasonable reliance upon the materially false and misleading statements that *Defendants* made or caused EXXI to make as alleged herein, Plaintiffs purchased EXXI common stock at artificially inflated prices or held onto those shares when it was not prudent for them to do so." (Am. Compl. ¶ 319) (emphasis added). This allegation tells the Court nothing about if, or how, Plaintiffs relied upon UHY's audit opinions. "Plaintiff's allegations are fatally defective because they do no more than track the elements of [fraud]." *Sam v. Wells Fargo Bank, N.A.*, No. 4:15-CV-03194, 2016 WL 4470111, at *10 (S.D. Tex. July 15, 2016) .

As such, Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b) and the common law fraud claim should be dismissed.

## V.    CONCLUSION AND PRAYER

For all of the foregoing reasons, UHY respectfully requests that the claims asserted against it in the Amended Complaint be dismissed with prejudice and that the Court grant UHY such other and further relief as it may deem just and proper.

Respectfully submitted,

*/s/ Nicole Figueroa*
Nicole Figueroa, Attorney in Charge
TX Bar No. 24069716/ S.D. Tex. No. 1330127
2501 North Harwood Street, Suite 1900
Dallas, Texas 75201
Tel.:  214.295.8062

Timothy Hoeffner (*Admitted Pro Hac Vice*)
340 Madison Avenue
New York, New York 10173
Tel.:  212.547.5595

Lawrence Wojcik (*Admitted Pro Hac Vice*)
Allyson Riemma (*Admitted Pro Hac Vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Tel.:  312.984.2057

**ATTORNEYS FOR DEFENDANT UHY LLP**

21

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on May 18, 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which sends electronic notification of such filing to all counsel of record.

/s/ *Allyson Riemma*
Allyson Riemma

22