IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KRISTEN PLAISANCE, ROBBIE PLAISANCE, RICHIE CORLEY, CHARLES F. LEEKLEY, BRETT MORRIS, HENRY NEGRETTE, JIM NESBITT, CINDY SPARACINO, RICHARD SPARACINO, CHRISTIAN SCHICK, JACK GOSTL, SANTIAGO CORDOVEZ, FLOYD BONE, TOM HOWLAND, MICHAEL MERNAH, BEN A. SEALE, JOE SHUPAK, MARSHALL WHITMER, BILL WALTERS, ROBERT ROIG, JOSEPH C. ROSSO, and ARTHUR D. SECOR,<br><br>          Plaintiffs,<br><br>v.<br><br>JOHN D. SCHILLER, JR., D. WEST GRIFFIN, HILL A FEINBERG, NORMAN M.K. LOUIE, WILLIAM COLVIN, DAVID M. DUNWOODY, CORNELIUS DUPRÉ II, KEVIN FLANNERY, SCOTT A. GRIFFITHS, JAMES LaCHANCE, and UHY LLP,<br><br>          Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. H-17-3741 |

## MEMORANDUM OPINION AND ORDER

This action is brought by plaintiffs, Kristen Plaisance, Robbie Plaisance, Rickie Corley, Charles F. Leekley, Brett Morris, Henry Negrette, Jim Nesbitt, Cindy Sparacino, Richard Sparacino, Christian Schick, Jock Gostl, Santiago Cordovez, Floyd Bone, Tom Howland, Michael Mernah, Ben A. Seale, Joe Shupak, Marshall Whitmer, Bill Walters, Robert Roig, Joseph C. Rosso, and Arthur D.

Secor (collectively, "Plaintiffs"), against defendants, UHY LLP ("UHY"), and ten individual defendants (collectively, "Individual Defendants"): John D. Schiller ("Schiller"), D. West Griffin ("Griffin"), Hill A Feinberg ("Feinberg"), Norman M.K. Louie ("Louie"), William Colvin ("Colvin"), David M. Dunwoody ("Dunwoody"), Cornelius Dupré II ("Dupré"), Kevin Flannery ("Flannery"), Scott A. Griffiths ("Griffiths"), and James LaChance ("LaChance"), for common law fraud and alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. §§ 78j(b), 78t(a) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, during the period beginning on September 28, 2007, and ending on December 30, 2016, arising from statements and representations regarding Energy XXI Ltd. ("EXXI" or the "Company"). Plaintiffs also assert claims for violations of § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), and for breach of fiduciary duty against the Individual Defendants all of whom served as members of EXXI's Board of Directors. Pending before the court are UHY LLP's Motion to Dismiss ("UHY's MD") (Docket Entry No. 101), Defendant D. West Griffin's Motion to Dismiss the Amended Complaint ("Griffin's MD") (Docket Entry No. 102), Defendant Norman M.K. Louie's Motion to Dismiss the Amended Complaint ("Louie's MD") (Docket Entry No. 103), Defendant John D. Schiller, Jr.'s Motion to Dismiss the Amended Complaint ("Schiller's MD") (Docket Entry No. 104), and The Director Defendants' Motion to Dismiss the Amended Complaint ("Director Defendants' MD") (Docket Entry

No. 105). For the reasons stated below, the defendants' motions to dismiss will be granted.

## I. Procedural History and Alleged Facts

Plaintiffs initiated this action on September 6, 2017, by filing in the Southern District of New York a Complaint for Violation of the Federal Securities Law, Common Law Fraud, and Breach of Fiduciary Duty (Docket Entry No. 1), asserting claims for fraud and violation of § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder against all defendants, and claims for violation of § 20(a) of the Exchange Act and breach of fiduciary duty against the Individual Defendants. On December 1, 2017, the Southern District of New York entered an Order pursuant to 28 U.S.C. § 1404(a) transferring the action to this court (Docket Entry No. 52). On February 12, 2018, defendants moved for dismissal (Docket Entry Nos. 85, 86, 89, 93, and 94). On March 29, 2018, Plaintiffs filed an Amended Complaint for Violation of the Federal Securities Law, Common Law Fraud, and Breach of Fiduciary Duty ("Plaintiffs' Amended Complaint") (Docket Entry No. 97), in which they reassert the same claims asserted in their initial complaint. On May 18, 2018, defendants filed the pending motions to dismiss Plaintiffs' Amended Complaint (Docket Entry Nos. 101-105). On July 16, 2018, plaintiffs filed responses to each of the pending motions to dismiss (Docket Entry Nos. 111-115), and on August 29, 2018, defendants filed replies in support of their motions to dismiss (Docket Entry Nos. 118-122).

Plaintiffs' Amended Complaint alleges that EXXI was founded by Schiller and Griffin in 2005 to acquire, explore, develop, and operate oil and natural gas properties onshore in Louisiana and Texas and offshore in the Gulf of Mexico Shelf, funded by a $300 million initial public offering of common stock traded on the London Stock Exchange Alternative Investment Market ("AIM").[1] Plaintiffs allege that Schiller served as EXXI's President, Chief Executive Officer ("CEO"), and member of the Board of Directors ("Board") from the company's inception through and including February 2, 2017, when EXXI announced the termination of Schiller's employment as President, CEO, and member of the Board in a Current Report filed with the SEC on Form 8-K.[2] From EXXI's founding in 2005 through and including October 15, 2015, Schiller also served as Chairman of the Board. He was stripped of that title by the Board on October 9, 2015, following an internal investigation that found he borrowed funds from personal acquaintances or their affiliates, some of whom provided services to EXXI or its subsidiaries, and that in 2014 he personally borrowed $3 million from defendant Louie before Louie was appointed to the Board effective December 15, 2014.[3] Plaintiffs allege that as EXXI's

---

[1]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 15 ¶¶ 64-65. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Id. at 6 ¶ 20.

[3]Id. ¶ 22.

-4-

Board Chairman and CEO, Schiller signed the Company's annual reports filed with the SEC on Forms 10-K and 10-K/A.[4]

Plaintiffs allege that defendant Griffin served as EXXI's Chief Financial Officer ("CFO") and Board member from the Company's inception through and including October 20, 2014, when EXXI announced Griffin's resignation in a press release and a Current Report filed with the SEC on Form 8-K/A on December 1, 2014, following BDO USA, LLP's ("BDO") acquisition of the Texas practice of UHY, which provided independent public accounting services to EXXI.[5] Plaintiffs allege that as CFO, Griffin signed EXXI's quarterly and annual reports filed with the SEC on Forms 10-Q, 10-K, and 10-K/A, and that Griffin is responsible for the content of the reports that he signed.[6]

Plaintiffs allege that UHY was engaged to audit EXXI's financial statements and to express an opinion on whether those financial statements fairly presented the financial condition of the Company.[7] Specifically, UHY was engaged to audit EXXI's financial statements for the years ended June 30, 2011, 2012, 2013, and 2014.[8] Plaintiffs allege that each audit opinion contained UHY's opinion that it audited EXXI's financial statements "in

---

[4]Id. ¶¶ 20-21.

[5]Id. at 9 ¶ 39.

[6]Id. ¶¶ 37-38.

[7]Id. at 19 ¶ 85.

[8]Id.

accordance with the standards of the Public Company Accounting Oversight Board (United States)" (the "PCAOB"),[9] that it "plan[ned] and perform[ed] the audit to obtain reasonable assurance about whether effective internal control over financial reporting was maintained in all material respects,"[10] and that each audit stated: "'In our opinion Energy XXI (Bermuda) Limited and subsidiaries maintained, in all material respects, effective internal control over financial reporting' for the year in question."[11]

Plaintiffs allege that in addition to serving on EXXI's Board, defendant Colvin was Chairman of the Audit Committee and a member of the Nomination and Governance Committee;[12] defendant Flannery was a member of the Audit Committee and the Nomination and Governance Committee;[13] defendant Dunwoody was Chairman of the Remuneration Committee and a member of the Audit Committee;[14] defendant Griffiths served on the Audit Committee and the Compensation Committee;[15] defendant Feinberg was Lead Independent Director, Chairman of the Nomination and Governance Committee, a member of the Compensation

---

[9] Id. at 20 ¶ 92.

[10] Id. ¶ 93.

[11] Id. at 20-21 ¶ 94.

[12] Id. at 11 ¶ 48.

[13] Id. ¶ 49.

[14] Id. at 11-12 ¶ 50.

[15] Id. at 12 ¶ 51.

Committee, and an <u>ex officio</u> member of the Audit Committee;[16] and defendant Dupré was Chairman of the Compensation Committee and a member of the Nomination and Governance Committee.[17]

Plaintiffs allege that between 2006 and 2010, EXXI completed five major acquisitions for aggregate cash consideration of approximately $2.5 billion of borrowed funds: (1) Marlin Energy, L.L.C. ("Marlin") in February 2006 for approximately $448.4 million; (2) certain Louisiana Gulf Coast producing properties from affiliates of Castex Energy, Inc. ("Castex Properties") in June 2006 for approximately $312.5 million; (3) certain Gulf of Mexico shelf properties from Pogo Producing Company ("Pogo Properties") in June 2007 for approximately $415.1 million; (4) certain Gulf of Mexico shelf oil and natural gas interests from MitEnergy Upstream LLC, a subsidiary of Mitsui & Co., Ltd. ("MitEnergy Interests") in November 2009 for $276.2 million; and (5) certain shallow water Gulf of Mexico shelf oil and natural gas interests from affiliates of Exxon Mobil Corporation ("ExxonMobil Acquisition") in December 2010 for $1.01 billion.[18]

Plaintiffs allege that on July 31, 2007, following EXXI's acquisition of the Pogo Properties in June of 2007, EXXI announced that in addition to trading on the AIM in London, its common stock

---

[16]<u>Id.</u> ¶ 52.

[17]<u>Id.</u> at 12 ¶ 53.

[18]<u>Id.</u> at 16 ¶¶ 69-71.

was approved for trading in the United States on the NASDAQ national exchange.[19] Plaintiffs allege that on August 12, 2011, EXXI's common stock was listed for trading on the NASDAQ Global Select Market under the symbol "EXXI."[20] Plaintiffs allege that because many institutional investors are prohibited from investing in companies that do not meet certain minimum requirements such as the requirements needed to be listed on the NASDAQ Global Select Market exchange, listing thereon gave EXXI greater access to capital and increased market liquidity.[21] Plaintiffs assert their belief that after a reasonable opportunity for discovery, evidence will show that but for EXXI's use of cash flow hedge accounting, EXXI would not have met the minimum requirements for listing on the NASDAQ Global Select Market.[22]

Plaintiffs allege that from 2010 to 2013 EXXI made optimistic and positive statements about its ultimately unsuccessful ultra-deep exploration program, particularly the Davy Jones No. 1 and No. 2 wells, that were false and misleading when made.[23]

Plaintiffs allege that in early 2014 defendants caused EXXI to acquire EPL, an independent oil and natural gas exploration and production company, and assert their belief that after a reasonable

---

[19]Id. at 16-17 ¶ 72.

[20]Id. at 17 ¶ 73.

[21]Id. ¶ 74.

[22]Id. ¶ 76.

[23]Id. at 25-32 ¶¶ 108-43.

opportunity for discovery evidence will show that Schiller pursued the acquisition without customary and reasonable due diligence, and consequently that EXXI overpaid for EPL,[24] that following the acquisition one of EPL's Board of Directors, defendant Griffiths, joined EXXI's Board and changed EPL's method of accounting from successful efforts to full cost accounting to match EXXI's accounting method,[25] EXXI's reported goodwill rose from zero reported in EXXI's financial statements from the period ended March 31, 2014, shortly before the acquisition, to $329 million reported by EXXI in its June 30, 2014, financial statements filed immediately after the acquisition.[26]

Plaintiffs allege that following EXXI's acquisition of EPL, EXXI issued financial statements that were false and misleading because EXXI failed to perform a quantitative goodwill impairment test and therefore failed to recognize goodwill impairments for EPL or for its other oil and gas properties[27] and failed to disclose the existence of a personal loan from defendant Louie to defendant Schiller.[28]

Plaintiffs allege that on or about December 14, 2014, EXXI common stock was cancelled for trading on the AIM in London by

[24]Id. at 33-34 ¶¶ 147-155.

[25]Id. at 35-36 ¶¶ 159-68.

[26]Id. at 37 ¶ 173.

[27]Id. at 38-49 ¶¶ 176-230.

[28]Id. at 56 ¶¶ 269-70.

action of the Board taken pursuant to a shareholder vote at the annual meeting held on November 4, 2014.[29]

Plaintiffs allege that in September of 2015, following a change in independent auditors, EXXI was required to restate more than four years of financial statements to eliminate the use of hedge accounting.[30] Plaintiffs allege that EXXI's financial statements for the years ended June 30, 2011, 2012, 2013, 2014, and 2015, filed with the SEC on August 26, 2011, August 9, 2012, August 21, 2013, August 28 and December 23, 2014, and September 29, 2015, were materially false and misleading because they stated that EXXI did not use hedging for speculative or trading purposes.[31] Plaintiffs allege that "[u]ntil EXXI's financial statements were corrected on September 29, 2015, the Company's publicly filed financial statements for at least the years ended June 30, 2011, 2012, 2013, and 2014, and for all the intervening quarters materially misstated and did not fairly and accurately present the Company's financial condition and its results of operations."[32] Plaintiffs also allege that

> EXXI's disclosure that it was required to restate its financial statements to eliminate cash flow hedge accounting was materially false and misleading because it made it appear that the reason for the restatement was a

---

[29]Id. at 18 ¶ 78.

[30]Id. at 17-18 ¶ 77.

[31]Id. at 52 ¶ 249.

[32]Id. at 54 ¶ 257.

mere technical deficiency in documentation, when the true reason for the restatement was that the Company was hedging for improper purposes, including speculating on future oil and natural gas prices or manipulating reported revenue and earnings.[33]

Plaintiffs allege that on April 16, 2016, EXXI sought protection from its creditors by filing a voluntary Chapter 11 bankruptcy petition in the Southern District of Texas.[34]

Plaintiffs allege that on April 20, 2016, EXXI was informed by the Listing Qualifications Department of NASDAQ that its stock would be delisted from the NASDAQ for failure to meet the minimum listing qualifications.[35]

Plaintiffs allege that on December 13, 2016, the Bankruptcy Court for the Southern District of Texas approved EXXI's amended plan of reorganization.[36]

## II. <u>Standards of Review</u>

Defendants argue that Plaintiffs' Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." <u>Ramming v.</u>

---

[33]<u>Id.</u> at 54-55 ¶ 259.

[34]<u>Id.</u> at 68-69 ¶ 328.

[35]<u>Id.</u> at 18 ¶ 79.

[36]<u>Id.</u> ¶ 81.

United States, 281 F.3d 158, 161 (5th Cir. 2001), <u>cert. denied sub</u> <u>nom. Cloud v. United States</u>, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the Plaintiffs, and draw all reasonable inferences in the Plaintiffs' favor. <u>Id.</u> To defeat a motion to dismiss pursuant to Rule 12(b)(6) a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 127 S. Ct. at 1965). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1965). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (quoting <u>Twombly</u>, 127 S. Ct. at 1966).

When considering a motion to dismiss courts generally are limited to the complaint and its proper attachments. <u>Dorsey v.</u> <u>Portfolio Equities, Inc.</u>, 540 F.3d 333, 338 (5th Cir. 2008). Courts may also rely on "'documents incorporated into the complaint by reference, and matters of which a court may take judicial

notice.'" Id. See also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (When considering a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.") (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). In securities cases courts may take judicial notice of the contents of public disclosure documents that are required by law to be filed and are filed with the SEC with the caveat that these documents may be considered only for the purpose of determining what statements they contain; not for proving the truth of their contents. Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 & n.1 (5th Cir. 1996) (citing and adopting rule of Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991), and explaining that rule does not apply to other forms of disclosure such as press releases and announcements at shareholder meetings).

### III. Analysis

Defendants argue that all of the claims asserted against them should be dismissed because Plaintiffs have failed to state a claim for which relief may be granted.

### A. Federal Securities Law Claims

Defendants argue that the securities claims asserted against them should be dismissed because Plaintiffs have failed to satisfy

the pleading requirements for stating either a primary claim under § 10(b) or Rule 10b-5, or a claim for control person liability under § 20(a), and because the factual allegations do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) or the Private Securities Litigation Reform Act ("PSLRA") set forth at 15 U.S.C. § 78u-4(b).

      1.   <u>Applicable Law</u>

      (a)   Federal Securities Law

Section 10(b) of the Exchange Act makes it unlawful for any person:

> To use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person, directly or indirectly:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5. To recover damages for violations of § 10(b) and Rule 10b-5, plaintiffs must prove

"(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."

Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398, 2407 (2014). See also Owens v. Jastrow, 789 F.3d 529, 535 (5th Cir. 2015) (same). To satisfy the materiality requirement, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Industries, Inc. v. Northway, Inc., 96 S. Ct. 2126, [449] (1976) (citing Basic Inc. v. Levinson, 108 S. Ct. 978, [231] (1988)). The Fifth Circuit has stated that "[m]ateriality is not judged in the abstract, but in light of the surrounding circumstances." Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1448 (5th Cir. 1993). Inclusion of cautionary language along with disclosure of any firm-specific adverse facts or assumptions is relevant to the materiality inquiry, but "cautionary language as such is not per se dispositive of this inquiry." Rubinstein v. Collins, 20 F.3d 160, 168 (5th Cir. 1994).

Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007) (quoting Ernst & Ernst v. Hochfelder, 96 S. Ct. 1375, 1381, n.12 (1976)). Scienter does not require a specific intent to deceive; instead,

the scienter element of a federal securities fraud claim
may be satisfied by proof that the defendant acted with
severe recklessness, which is "limited to those highly
unreasonable omissions or misrepresentations that involve
not merely simple or even inexcusable negligence, but an
extreme departure from the standards of ordinary care,
and that present a danger of misleading buyers or sellers
which is either known to the defendant or is so obvious
that the defendant must have been aware of it."

Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir.
1994) (quoting Shushany v. Allwaste, Inc., 992 F.2d 517, 521 (5th
Cir. 1993)). Plaintiffs "must allege facts sufficient to raise a
strong inference of scienter with respect to each individual
defendant." R2 Investments LDC v. Phillips, 401 F.3d 638, 643 (5th
Cir. 2005) (citing Southland Securities Corp. v. INSpire Ins.
Solutions, Inc., 365 F.3d 353, 365 (5th Cir. 2004) (holding that
plaintiffs claiming securities fraud against multiple defendants
must "distinguish among those they sue and enlighten *each defendant*
as to his or her particular part in the alleged fraud")). Group
allegations that "the defendants" or "the company" knew something
do not meet that standard. Southland, 365 F.3d at 366. The
factual allegations contained in the entire complaint must be
considered in determining whether plaintiffs' allegations raise a
strong inference of scienter. Id. To withstand a motion to
dismiss, the facts alleged must permit an inference of intentional
deception that is at least equally as compelling as any alternative
inference. Lormand v. US Unwired, Inc., 565 F.3d 228, 254 (5th
Cir. 2009) (quoting Tellabs, 127 S. Ct. at 2499, 2510).

-16-

Plaintiffs must show a causal connection between the company's revealing of the truth regarding an earlier misrepresentation and a subsequent decline in the company's stock price. See Alaska Electrical Pension Fund v. Flowserve Corp., 572 F.3d 221, 229 (5th Cir. 2009). This corrective disclosure must be "related to" or "relevant to" the alleged fraud, meaning the disclosed information must make the existence of the alleged fraud "more probable than it would be without that alleged fact." Public Employees' Retirement System of Mississippi, Puerto Rico Teachers' Retirement System v. Amedisys, Inc., 769 F.3d 313, 321 (5th Cir. 2014), cert. denied, 135 S. Ct. 2892 (2015). The corrective disclosure "can be gradually perceived in the marketplace through a series of partial disclosures." Id. at 322. Partial disclosures are viewed collectively and considered as a whole to determine when cumulative facts support a corrective disclosure that meets the loss causation pleading standard. Id. at 325.

The parties agree that the applicable statute of limitations and repose is 28 U.S.C. § 1658(b).[37] Under 28 U.S.C. § 1658(b) an action for securities fraud must be brought no later than two years after the discovery of the facts constituting the violation or five years after the occurrence of the violation, whichever is earlier.

---

[37]See, e.g., Director Defendants' MD, Docket Entry No. 105, pp. 29-30, and Plaintiffs' Memorandum of Law in Opposition to the Director Defendants' Motion to Dismiss Amended Complaint ("Plaintiffs' Opposition to Director Defendants' MD"), Docket Entry No. 115, p. 26.

The period of repose begins to run from the date of the misrepresentation or omission that forms the basis of the securities law violation. <u>Hall v. Variable Annuity Life Insurance Co.</u>, Civil Action No. H-11-3639, 2012 WL 12877431, at *4 (S.D. Tex. May 31, 2012), <u>aff'd</u>, 727 F.3d 372 (5th Cir. 2013) (citing <u>In re Exxon Mobil Corp. Securities Litigation</u>, 500 F.3d 189, 199-200 (3d Cir. 2007) ("[W]e hold that the repose period applicable to § 10(b) claims as set out in §§ 9(e) and 1658(b)(2) begins to run on the date of the alleged misrepresentation."). Because Plaintiffs filed this action on September 6, 2017,[38] the date of repose is September 6, 2012. Plaintiffs state that they "do not assert any claims for any false, misleading, or incomplete statements made prior to that date."[39] Nevertheless, citing <u>Rubinstein</u>, 20 F.3d at 170 n.41, Plaintiffs argue that "to the extent that untrue statements were made prior to September 6, 2012, about which Defendants had a duty to correct — such as EXXI's 2011 annual report, which improperly utilized hedge accounting — the omission of a corrective disclosure in subsequent statements made *after* that date are actionable."[40]

In <u>Rubinstein</u>, 20 F.3d at 170 n.41, the Fifth Circuit acknowledged that defendants have a duty under Rule 10b-5 to

---

[38]<u>See</u> Complaint for Violation of the Federal Securities Law, Common Law Fraud, and Breach of Fiduciary Duty, Docket Entry No. 1.

[39]Plaintiffs' Opposition to Director Defendants' MD, Docket Entry No. 115, p. 26.

[40]<u>Id.</u>

correct statements if those statements have become materially misleading in light of subsequent events, but the Rubinstein court neither held nor stated that material omissions made before the date of repose remain actionable because defendants have an ongoing duty to correct such omissions. Plaintiffs' argument that material omissions made before the date of repose are nevertheless actionable because defendants had an ongoing duty to correct those omissions would negate the five-year statute of repose by allowing plaintiffs to revive time-barred claims simply by asserting that defendants had an ongoing duty to correct their material omissions. Any claims based on misrepresentations or omissions allegedly made before September 6, 2012, are therefore barred by the statute of repose. See Hall, 2012 WL 12877431, at *4 (citing Malhotra v. The Equitable Life Assurance Society of the United States, 364 F. Supp. 2d 299, 305-06 (E.D.N.Y. 2005) (granting defendants' 12(b)(6) motion on the ground that the statute of repose began to run on the day of the initial omission).

(b)    Federal Rule of Civil Procedure 9(b)

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Plaintiffs must plead the elements of their Rule 10b-5 claims with particularity. See Goldstein v. MCI WorldCom, 340 F.3d

238, 245 (5th Cir. 2003) (citing <u>Williams v. WMX Technologies, Inc.</u>, 112 F.3d 175, 177 (5th Cir.), <u>cert. denied</u>, 118 S. Ct. 412 (1997)). Particularity is required so that the complaint provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs. <u>See</u> <u>Tuchman</u>, 14 F.3d at 1067.

Pleading fraud with particularity in this circuit requires "the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" <u>Id.</u> at 1068 (quoting <u>Tel-Phonic Services, Inc. v. TBS International, Inc.</u>, 975 F.2d 1134, 1139 (5th Cir. 1992)). <u>See also</u> <u>Carroll v. Fort James Corp.</u>, 470 F.3d 1171, 1174 (5th Cir. 2006) (quoting <u>United States ex rel. Riley v. St. Luke's Episcopal Hospital</u>, 355 F.3d 370, 381 (5th Cir. 2004) ("In cases concerning fraudulent misrepresentation and omission of facts, Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading.")). "A dismissal for failure to plead fraud with particularity as required by rule 9(b) is a dismissal on the pleadings for failure to state a claim." <u>Southland</u>, 365 F.3d at 361 (citing <u>Shushany</u>, 992 F.2d at 520-520).

(c)   Private Securities Litigation Reform Act

In 1995 Congress amended the Exchange Act through the passage of the PSLRA, 15 U.S.C. § 78u-4(b)(1).  In relevant part the PSLRA provides:

**(1)  Misleading statements and omissions**

In any private action arising under this chapter in which the plaintiff alleges that the defendant--

> **(A)** made an untrue statement of a material fact;  or
>
> **(B)** omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

**(2)  Required state of mind**

> **(A) In general**
>
> Except as provided in subparagraph (B), in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

. . .

**(3)  Motion to dismiss; stay of discovery**

> **(A)  Dismissal for failure to meet pleading requirements**
>
> In any private action arising under this chapter, the court shall, on the motion of any defendant,

> dismiss the complaint if the requirements of
> paragraphs (1) and (2) are not met.

15 U.S.C. § 78u-4(b).

In <u>ABC Arbitrage Plaintiffs Group v. Tchuruk</u>, 291 F.3d 336, 350 (5th Cir. 2002), the court coalesced the pleading requirements in the PSLRA and Rule 9(b) into a succinct directive for litigants:

> [A] plaintiff pleading a false or misleading statement or omission as the basis for a section 10(b) and Rule 10b-5 securities fraud claim must, to avoid dismissal pursuant to Rule 9(b) and 15 U.S.C. §§ 78u-4(b)(1) & 78u-4(b)(3)(A):
>
> (1) specify each statement alleged to have been misleading, *i.e.*, contended to be fraudulent;
>
> (2) identify the speaker;
>
> (3) state when and where the statement was made;
>
> (4) plead with particularity the contents of the false representations;
>
> (5) plead with particularity what the person making the misrepresentation obtained thereby; and
>
> (6) explain the reason or reasons why the statement is misleading, *i.e.*, why the statement is fraudulent.
>
> This is the "who, what, when, where, and how" required under Rule 9(b) in our securities fraud jurisprudence and under the PSLRA. Additionally, under 15 U.S.C. § 78u-4(b)(1), for allegations made on information and belief, the plaintiff must:
>
> (7) state with particularity all facts on which that belief is formed, *i.e.*, set forth a factual basis for such belief.

In <u>Indiana Electric Workers' Pension Fund IBEW v. Shaw Group, Inc.</u>, 537 F.3d 527, 533 (5th Cir. 2008), the Court reiterated that the PSLRA heightened the pleading standards for private claims of securities fraud by requiring plaintiffs to allege with

particularity why each one of defendants' representations or omissions was misleading under 15 U.S.C. § 78u-4(b)(1), and by requiring plaintiffs to plead with particularity those facts giving rise to a strong inference that the defendant acted with the required state of mind under 15 U.S.C. § 78u-4(b)(2). In Tellabs, 127 S. Ct. at 2510, the Supreme Court held that a complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." However, in Lormand, 565 F.3d at 267, the Fifth Circuit held that the PSLRA did not heighten pleading standards for all six elements of securities fraud. The Fifth Circuit explained that the plain text of 15 U.S.C. § 78u-4(b)(4) provides only that "the plaintiff shall have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages." Id. at 255 n.18. Nothing in this language expressly or impliedly heightens the standard of pleading to loss causation. Thus, when considering a motion to dismiss, courts are "not authorized or required to determine whether the plaintiff's plausible inference of loss causation [under 15 U.S.C. § 78u-4(b)(4)] is equally or more plausible than other competing inferences, as [they] must in assessing allegations of scienter under the PSLRA." Id. at 267.

The PSLRA contains a safe harbor provision that protects individuals and corporations from liability for certain

forward-looking statements that later prove false. To qualify for this protection the statement at issue must be "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" or be "immaterial." 15 U.S.C. § 78u-5(c)(1)(A)(i, ii). "To avoid the safe harbor, plaintiffs must plead facts demonstrating that the statement was made with actual knowledge of its falsity." <u>Southland</u>, 365 F.3d at 371 (citing 15 U.S.C. § 78u-5(c)(1)(B); <u>Nathenson v. Zonagen Inc.</u>, 267 F.3d 400, 409 (5th Cir. 2001)).

### 2. <u>Application of the Law to the Alleged Facts</u>

#### (a) Defendant UHY

UHY argues that the federal securities law claims asserted against it should be dismissed because Plaintiffs' Amended Complaint fails to allege facts capable of establishing an actionable misstatement or omission of fact arising from its audit opinions or a strong inference of scienter.[41] UHY also joins in the arguments presented in the Director Defendants' MD with respect to the securities fraud claims regarding group pleading, loss causation, and the statute of repose.[42]

---

[41]UHY's MD, Docket Entry No. 101, p. 12. <u>See also</u> UHY LLP's Reply in Support of the Motion to Dismiss the Amended Complaint (UHY's Reply"), Docket Entry No. 119, pp. 6-15.

[42]UHY's MD, Docket Entry No. 101, p. 7 n.2.

## (1) Alleged Misstatements and Omissions

Citing <u>Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund</u>, 135 S. Ct. 1318 (2015), UHY asserts that its audit reports are statements of opinion, not fact, and argues that the securities law claims asserted against it should be dismissed because plaintiffs fail to allege an actionable misstatement or omission of fact arising from its audit reports.[43] At least one court in this district has held that audit reports are statements of opinion, not fact, and plaintiffs do not argue otherwise. <u>See</u> <u>Johnson v. CBD Energy Ltd.</u>, Civil Action H-15-1668, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) ("an auditor's 'statement regarding . . . compliance inherently [is] one of opinion'"). Nevertheless, without addressing the applicability of the Supreme Court's <u>Omnicare</u> opinion, plaintiffs respond that UHY's

> argument ignores the fact that Plaintiffs have alleged materially false and misleading statement[s] *in UHY's own audit reports*. As alleged in the Amended Complaint, each of the Company's annual financial statements included an affirmative statement prepared by UHY that it audited the financial statements "in accordance with the standards of the [PCAOB] (United States)." ¶ 92. Plaintiffs also allege UHY represented that it planned and performed the audits to obtain reasonable assurance about whether the Company maintained effective internal control over its financial reporting. ¶ 93. And UHY also affirmatively represented in each audit report that EXXI maintained effective internal control over its financial reporting. ¶ 94.

---

[43]<u>Id.</u> at 20.

As alleged in the Amended Complaint, and as explained above, those statement[s] were materially false and misleading, and UHY had no basis for making them.[44]

Asserting that UHY audited EXXI's annual financial statements included in EXXI's 2011, 2012, 2013, and 2014 annual reports filed with the SEC on Form 10-K, plaintiffs allege that "[t]hose financial statements were erroneous,"[45] because

> [a]s EXXI announced in a press release and a Current Report on Form 8-K filed with the SEC on September 8, 2015, the Company's previously issued consolidated financial statements for the years ended June 30, 2011, 2012, 2013 and 2014, along with its consolidated financial statements for the quarters ended September 30, 2013 and 2014, December 31, 2013 and 2014, March 31, 2014 and 2015, and June 30, 2014, should no longer be relied upon and would be reinstated. ¶ 83.[46]

In <u>Omnicare</u> the Court clarified how trial courts should evaluate whether a plaintiff has alleged an actionably misleading statement of opinion. <u>Omnicare</u> provides "two potential avenues for plaintiffs to establish the falsity of an opinion." <u>In re BP p.l.c. Securities Litigation</u>, 2016 WL 3090779, at *9. First, "every . . . statement [of opinion] explicitly affirms one fact: that the speaker holds the stated belief." <u>Omnicare</u>, 135 S. Ct. at 1327. A speaker can be liable for an opinion statement if the speaker did not in fact hold that opinion. Second, "depending on the circumstances," a reasonable investor could

---

[44]Plaintiffs' Memorandum of Law in Opposition to Defendant UHY LLP's Motion to Dismiss Amended Complaint ("Plaintiffs' Opposition to UHY's MD"), Docket Entry No. 111, p. 17.

[45]<u>Id.</u> at 5.

[46]<u>Id.</u> at 5-6.

understand an opinion statement to convey facts about the speaker's basis for holding that view. Specifically, [a speaker's] statement of opinion may fairly imply facts about the inquiry the issuer conducted or the knowledge it had. And if the real facts are otherwise, but not provided, the opinion statement will mislead by omission.

Id. at 1322. Thus, even if a speaker's opinion is sincerely held,

the statement may nonetheless be actionable under 10b-5's omissions provision if: (i) the speaker "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion," and (ii) "those facts conflict with what a reasonable investor would take from the statement itself."

In re BP p.l.c. Securities Litigation, MDL No. 4:10-MD-2185, 2016 WL 3090779, at *9 (S.D. Tex. May 31, 2016) (quoting Omnicare, 135 S. Ct. at 1329). The Omnicare Court emphasized that the latter avenue to liability does not allow a plaintiff to circumvent the particularity and materiality requirements of a fraud claim by alleging in general terms that the defendant improperly failed to reveal the basis for his opinion, or failed to disclose "some fact cutting the other way." 135 S. Ct. at 1329 (explaining that "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts; indeed, the presence of such facts is one reason why [a speaker] may frame a statement as an opinion, thus conveying uncertainty"). Id. But the Supreme Court also recognized that reasonable investors expect a speaker's statement of opinion to fairly align with the information in his or her possession at the time. Id.

In their Amended Complaint Plaintiffs allege that

UHY's unqualified audit reports were materially false and misleading because, among other things: (a) the audits

were not conducted in accordance with PCAOB standards; and (b) EXXI's financial statements did not fairly present the Company's true financial position and results of operations and did not comply with GAAP [Generally Accepted Accounting Principles].[47]

In support of their allegations that UHY's audit reports were materially false and misleading, Plaintiffs allege

102. The Company's financial statements did not comport with GAAP as they failed to disclose the millions of dollars in loans to Defendant Schiller from EXXI's vendors and from a confederate on the Board who was also an affiliate of one of the Company's largest shareholders.

103. Contrary to the Audit Report, the audit was not conducted in accordance with PCAOB standards. In particular, PCAOB Standard AU § 316 sets forth certain fraud risks or red flags, including: (a) unsupported balances or transactions; (b) inconsistent, vague or implausible responses from management arising from inquiries or analytical procedures; (c) lack of timely and appropriate documents; (d) missing documents; and (e) evasive or unreasonable responses of management to audit reports.

104. In conducting its audits of the financial statements in EXXI's annual reports, Defendant UHY ignored the most obvious of red flags, the missing documentation necessary to permit the Company to use cash flow hedge accounting.[48]

Missing from the Plaintiffs' Amended Complaint are allegations of fact capable of proving that UHY did not subjectively believe its audit opinions when they were issued. Therefore, to state a claim against UHY for its audit reports, Plaintiffs must allege, with particularity, facts capable of establishing that UHY knew,

_____

[47]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 22 ¶ 100.

[48]Id. at 24 §§ 102-04.

but omitted to include in its audit reports, material facts that contradict its opinion statements.  See <u>In re Plains All American Pipeline, L.P. Securities Litigation</u>, 245 F. Supp. 3d 870, 905 (S.D. Tex. 2017).[49]  The facts that Plaintiffs allege contradict UHY's audit opinions concern loans that defendant Schiller received from defendant Louie and EXXI vendors and lack of documentation needed to support EXXI's use of hedge accounting.[50]  But missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing that when UHY issued its audit reports, UHY knew or should have known about Schiller's loans.  Moreover, since Plaintiffs' Amended Complaint expressly alleges that Schiller's loans were undisclosed until October of 2015, long after UHY issued the audit opinions about which Plaintiffs complain,[51] the facts

_____

[49]In <u>Plains All American</u> Judge Rosenthal explained that

> [s]howing that a statement was false or misleading using this <u>Omnicare</u> prong blurs the lines between the falsity and scienter elements of an Exchange Act claim. Determining whether a statement is false or misleading turns on what the speaker knew, making it similar to the scienter inquiry. But even though this <u>Omnicare</u> inquiry overlaps with the scienter inquiry, the two are not identical. Here, the issue is whether the plaintiffs have adequately pleaded that the defendants were aware of material facts that: (1) contradicted or undermined their compliance opinion statements; and (2) that an investor would reasonably believe were not true based on that statement. The scienter issue is the individual's state of mind in stating the opinion.

245 F. Supp. 3d at 905.

[50]Plaintiffs' Opposition to UHY's MD, Docket Entry No. 111, p. 17.

[51]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 3 ¶ 22, p. 4 ¶ 24, p. 10 ¶ 44.

alleged in Plaintiffs' Amended Complaint contradict their contention that UHY's audit reports were false and misleading because they omitted information about Schiller's loans.[52]

Also missing from Plaintiffs' Amended Complaint are any allegations of fact capable of establishing that when UHY issued its audit reports, UHY knew or should have known that EXXI lacked documentation needed to support its use of cash flow hedge accounting. Asserting that "EXXI lacked the specific required documentation to utilize cash flow hedge accounting,"[53] Plaintiffs argue that

> [i]n any adequate audit, UHY would have requested or looked for the required documentation as part of its audit procedures. Had UHY done so, it immediately would have learned that EXXI lacked the required documentation for hedge accounting. Had UHY performed any adequate audit, the lack of specific required documentation would have been obvious to it.[54]

A careful review of Plaintiffs' Amended Complaint, however, only reveals allegations that UHY's audit reports were false when made because EXXI later restated some of its financial statements.[55]

Plaintiffs allege that in December of 2014, following UHY's acquisition by BDO, EXXI engaged BDO as its successor auditor, and

---

[52]See Plaintiffs' Opposition to UHY's MD, Docket Entry No. 111, p. 16 n.7 (apparently contradicting the allegations in ¶ 102 of Plaintiffs' Amended Complaint by stating: "Plaintiffs do not allege that UHY's audits were deficient because they failed to uncover the loans.").

[53]Id. at 15.

[54]Id.

[55]See Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 50-51 ¶¶ 239-243.

that in September of 2015 EXXI filed a Current Report on Form 8-K
with the SEC announcing that the Company's previously issued
consolidated financial statements for the years ended June 30,
2011, 2012, 2013, and 2014, and for the quarters ended
September 30, 2013 and 2014, December 31, 2013 and 2014, March 31,
2014 and 2015, and June 30, 2014, should no longer be relied upon
and would be restated.[56]  Plaintiffs allege that

> 252. During the preparation of its annual report on
> Form 10-K for the year ended June 30, 2015, EXXI and its
> new auditor, BDO, determined that certain of the
> Company's oil and gas hedges did not qualify for cash
> flow hedge accounting treatment. EXXI and BDO determined
> that the Company's hedge documentation did not specify
> the hedged items and, therefore, the designations failed
> to meet the documentation requirements for cash flow
> hedge accounting treatment.
>
> 253. As a result of that determination, EXXI was required
> to restate its previously issued consolidated financial
> statements to reflect the unrealized recognition of gains
> and losses on derivative financial instruments . . .[57]

But missing from Plaintiffs' Amended Complaint are allegations of
fact capable of establishing that when UHY issued its audit
reports, UHY knew or should have known that EXXI lacked
documentation required to use cash flow hedge accounting.  Instead,
asserting that "[t]he lack of documentation regarding the hedged
items could not be a result of a difference of opinion between the
Company's auditors BDO and UHY as the Company disclosed that it had

---

[56]Id. at 51 ¶¶ 244-245.

[57]Id. at 53 ¶¶ 252-53.

*no documentation* regarding what was being hedged,"[58] Plaintiffs allege that UHY's audit reports were false and misleading because absent the missing documentation the audit reports could not have been conducted in accordance with PCAOB Auditing Standards or Generally Accepted Auditing Standards ("GAAS").[59]

Despite Plaintiffs' assertion to the contrary, the Current Report on Form 8-K filed with the SEC in September of 2015 announcing the restatement did not state that EXXI had no documentation regarding what was being hedged. Instead, EXXI's September 2015 Form 8-K states:

> [I]n connection with preparing its annual report on Form 10-K for the year ended June 30, 2015 (the "2015 Form 10-K") management of Energy XXI Ltd. (the "Company") and the Audit Committee of its Board of Directors (the "Audit Committee") determined that the contemporaneous formal documentation it had historically prepared to support its initial designations of derivative financial instruments as cash flow hedges in connection with the Company's crude oil and natural gas hedging program did not meet the technical requirements to qualify for cash flow hedge accounting treatment in accordance with ASC Topic 815, Derivatives and Hedging. The primary reason for this determination was that the formal hedge documentation lacked specificity of the hedged items and, therefore, the designations failed to meet hedge documentation requirements for cash flow hedge accounting treatment.[60]

EXXI's disclosures in the September 2015 Form 8-K show that EXXI's management reached a judgment different from that previously

---

[58]<u>Id.</u> at 50 ¶ 235 (emphasis in original).

[59]<u>Id.</u> at 50-51 ¶¶ 237-43.

[60]September 2, 2015, Form 8-K, Exhibit A to UHY's MD, Docket Entry No. 101-1, p. 2.

-32-

reached regarding the level of specificity required for the documentation of hedged transactions; the disclosures do not show that EXXI had no documentation regarding what was being hedged. Nor do EXXI's disclosures mention UHY or its auditing services as a reason for the restatements.

Because Plaintiffs fail to allege facts capable of establishing either that UHY did not sincerely believe the opinions stated in its audit reports, or that when UHY issued its audit reports UHY knew or should have known — but failed to disclose — material facts about its inquiry into or knowledge concerning the opinions stated in its audit reports, and that those facts conflict with what a reasonable investor would take from the reports themselves, i.e., information about Schiller's loans and about deficiencies in documentation required to support EXXI's use of cash flow hedge accounting, Plaintiffs have failed to allege facts capable of establishing an actionable misstatement or omission of fact arising from the opinions expressed in UHY's audit reports. See Omnicare, 135 S. Ct. at 1329. Moreover, for the reasons stated below, the court concludes that even if the facts alleged in Plaintiffs' Amended Complaint were capable of establishing an actionable misstatement or omission of fact in UHY's audit reports, Plaintiffs have failed to allege facts capable of raising a strong inference that the misstatements or omissions were made with scienter.

## (2) Scienter

UHY argues that the Exchange Act claims asserted against it should be dismissed because Plaintiffs fail to allege facts capable of establishing a strong inference of scienter. Asserting that EXXI restated its financial statements for fiscal years 2011 through 2014, Plaintiffs argue that the restatements are compelling evidence of UHY's scienter because "UHY knew, or was severely reckless in not knowing, that EXXI's consolidated annual financial statements were not prepared in accordance with GAAP and did not fairly and accurately present the Company's financial results."[61] Plaintiffs argue that "UHY has provided no alternative or opposing explanation for certifying financial statements in which EXXI utilized cash flow hedge accounting without the requisite documentation of specific hedged risks."[62]

To adequately plead scienter Plaintiffs must allege circumstances supporting a strong inference that UHY had actual knowledge, or recklessly disregarded, that its audit reports were false or misleading when made or were made without a reasonable basis. See Lovelace, 78 F.3d at 1018-19. Circuit courts of appeal have found that the requirement of "recklessness" in securities fraud cases is especially stringent when a claim is made against an outside auditor like UHY. See PR Diamonds, Inc. v. Chandler, 364

---

[61]Plaintiffs' Opposition to UHY's MD, Docket Entry No. 111, p. 8.

[62]Id.

F.3d 671, 693 (6th Cir. 2004) (collecting cases). "Recklessness on the part of an independent auditor entails a mental state so culpable that it 'approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company.'" Id. (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 121 (2d Cir. 1982)). Thus, Plaintiffs must allege facts capable of establishing not merely that there was a deviation from accounting principles, but

> that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

Id. at 693-94 (quoting In re Worlds of Wonder Securities Litigation, 35 F.3d 1407, 1426 (9th Cir. 1994)). See also In re Franklin Bank Corp. Securities Litigation, 782 F. Supp. 2d 364, 402 (S.D. Tex. 2011); In re Dell Inc., Securities Litigation, 591 F. Supp. 2d 877, 899 (W.D. Tex. 2008).

A careful review of the Plaintiffs' allegations of scienter reveal little more than assertions that UHY's audit reports were false because EXXI later restated certain financial information. Courts in this circuit inferring scienter based in part on improper accounting do so only when other factors strongly support the inference. See In re ArthroCare Corp. Securities Litigation, 726 F. Supp. 2d 696 (W.D. Tex. 2010) (improper accounting practices and denials of media reports); In re Seitel, Inc. Securities Litigation, 447 F. Supp. 2d 693 (S.D. Tex. 2006) (improper

accounting practices and overstated revenues, memoranda and meeting minutes revealing that the defendants explicitly discussed the improper accounting methods, affirmatively chose to ignore potential problems, and dismissed an auditor who confronted them about the improper practices).

Plaintiffs' Amended Complaint does not allege media reports or internal company documents that would permit an inference that UHY knew of or recklessly disregarded evidence that EXXI's accounting misrepresented EXXI's financial condition. Instead, as reasons to infer UHY's scienter, Plaintiffs point to the magnitude of the restatements, and to the reason for the restatements — i.e., lack of specificity in the documentation used to support EXXI's use of cash flow hedge accounting.[63] But the magnitude of misstated financials cannot support a strong inference of scienter absent allegations of facts capable of establishing either that UHY knew or was severely reckless in not knowing of the improper accounting, or that UHY ignored warning signs or red flags indicating that such an inference is merited. See ArthroCare, 726 F. Supp. 2d at 724; Seitel, 447 F. Supp. 2d at 693.

Asserting that "the lack of supporting documentation of EXXI's hedging activities [needed] to permit the Company to utilize hedge accounting was a glaring red flag, giving UHY every reason to know that the financial statements contained material misstatements or

---

[63]Id. at 11-14.

omissions,"[64] Plaintiffs argue that "[h]ad UHY performed any adequate audit, the lack of specific required documentation would have been obvious to it."[65] But Plaintiffs do not plead any specific facts capable of showing what UHY's audits entailed, how or why they were deficient, or why there is any reason to believe that the alleged deficiencies were purposeful or reckless as opposed to negligent mistakes. <u>Arthrocare</u>, 726 F. Supp. 2d at 735 (citing <u>Dell</u>, 591 F. Supp. 2d at 903). Instead, Plaintiffs rely on the circular reasoning that UHY must have acted with scienter simply because it did not catch the lack of specific documentation for cash flow hedge accounting later identified as the reason for EXXI's restatements. These allegations may support an inference of negligent mismanagement, but they are not sufficient to make intentional or reckless fraud at least as compelling as plausible nonculpable explanations. <u>See</u> <u>Lormand</u>, 565 F.3d at 254 (quoting <u>Tellabs</u>, 127 S. Ct. at 2510).

Plaintiffs' pleading on this issue consists of long explanations of the GAAP and GAAS accounting principles allegedly violated, followed by the conclusory statement that UHY clearly violated that principle based solely on the fact that the restatement was issued.[66] But the GAAS standards acknowledge that

---

[64]<u>Id.</u> at 14-15.

[65]<u>Id.</u> at 15.

[66]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 20-24 ¶¶ 92-104, pp. 49-51 ¶¶ 231-43.

"even a properly planned . . . audit may not detect a material misstatement," AU § 230.12; thus, the mere fact that the audits did not catch a later-revised accounting error in the financial statements is not conclusive. _Arthrocare_, 726 F. Supp. 2d at 735 (citing _In re Dell_, 591 F. Supp. 2d at 903). Absent facts specifying fraudulent intent or UHY's state of mind, accounting errors "merely suggest that either management or the accountant missed something, and may have failed to prepare or review the financial statements in accordance with an accepted standard of reasonable care." _In re Baker Hughes Securities Litigation_, 136 F. Supp. 2d 630, 649 (S.D. Tex. 2001). The parties dispute the simplicity and obviousness of the misapplied accounting rules.[67] But reading the Plaintiffs' Amended Complaint and the record in the Plaintiffs' favor, the Amended Complaint does not sufficiently allege that EXXI violated rules that were so clear and obvious as to make its outside auditor either knowingly deceptive or severely reckless in certifying EXXI's figures on the SEC filings. Plaintiffs' factual allegations make it more plausible, or at least as plausible, to infer that UHY acted negligently than to infer that UHY knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in EXXI's financial statements.

Because Plaintiffs have failed to allege facts capable of establishing that when UHY issued its audit reports, UHY knew — or

_____

[67]_See_ Plaintiff's Opposition to UHY's MD, Docket Entry No. 111, pp. 9-11.

was severely reckless in not knowing — that its audit opinions contained statements that were false or misleading or that the audit opinions were so deficient that they amounted to "no audit at all," Plaintiffs' allegations against UHY are not capable of raising a strong inference of scienter. See In re Dell Inc., Securities Litigation, 591 F. Supp. 2d at 900. That UHY failed to discover in 2011 and 2014 accounting deficiencies that were not found until 2015 might arguably and at most support an allegation of negligence, but not of fraud.[68] Accordingly, UHY's motion to dismiss the federal securities law claims asserted against it will be granted and those claims will be dismissed with prejudice.

(b) Defendant Griffin

Griffin argues that the Exchange Act claims asserted against him should be dismissed because he did not make many of the alleged misstatements, because he left EXXI on October 20, 2014 — more than two years before the last alleged misstatement, and because Plaintiffs fail to plead facts capable of raising a strong inference of scienter with respect to statements that he did make.[69] Griffin also joins in all of the arguments presented in the Director Defendants' MD and in the arguments presented in Louie's

---

[68]For the reasons stated in § III.A.2(e)(3), below, the court concludes that Plaintiffs have failed to plead facts capable of establishing loss causation.

[69]Griffin's MD, Docket Entry No. 102, p. 5.

MD with respect to alleged "related party transactions."[70]
Plaintiffs respond that Griffin's MD should be denied because he is
liable for EXXI's false, misleading, and incomplete financial
statements, and because they have adequately alleged scienter with
respect to him.[71]

### (1) Alleged Misstatements and Omissions

Plaintiffs allege that Griffin served as EXXI's CFO and Board
member from the Company's inception in 2005 through and including
October 20, 2014, when EXXI announced Griffin's resignation in a
Press Release and a Current Report filed with the SEC on Form 8-K/A
on December 1, 2014, following BDO's acquisition of UHY's Texas
practice, which had provided independent public accounting services
to EXXI.[72] Plaintiffs allege that as CFO, Griffin signed EXXI's
quarterly and annual reports filed with the SEC on Forms 10-Q,
10-K, and 10-K/A, and that Griffin is responsible for the content
of the reports that he signed and the financial information
contained in the Company's press releases.[73] Plaintiffs allege that
Griffin was responsible for preparing nearly all of the financial

---

[70]Id. at 5 & n.1.

[71]Plaintiffs' Memorandum of Law in Opposition to Defendant
D. West Griffin's Motion to Dismiss Amended Complaint ("Plaintiffs'
Opposition to Griffin's MD"), Docket Entry No. 112, pp. 7-16.

[72]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 9 ¶ 39.

[73]Id. at 9 ¶¶ 37-38.

statements that were restated after BDO became EXXI's auditor and determined that EXXI's financial statements for 2011 through 2014 should no longer be relied upon.[74]  Asserting that

> [t]he financial statements issued during Griffin's tenure as CEO that had to be restated after his resignation were the annual financial statements for the four years ended June 30, 2011, 2012, 2013, and 2014, and the quarterly financial statements for the quarters ended September 30, and December 31, 2013, March 31, 2014, and June 30, 2014,[75]

Plaintiffs argue that these financial statements were false and misleading because they

> were not prepared according to generally accepted accounting principles ("GAAP"), including ASC Topic 815, which requires the reporting entity to document exactly what was being hedged, specifying the exact items (*i.e.*, the particular monthly well production) to utilize hedge accounting. . . . While Griffin was responsible for EXXI's financial reporting, the Company lacked the necessary documentation for its hedging program to utilize cash flow hedge [accounting] but did so anyhow.[76]

Griffin does not plausibly argue that the financial statements he signed that were ultimately restated did not contain statements that were false and misleading.[77]  The court concludes, therefore,

---

[74]Plaintiffs' Opposition to Griffin's MD, Docket Entry No. 112, p. 8 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 51 ¶ 245).

[75]*Id.* at 8.

[76]*Id.* (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 17-18 ¶ 77).

[77]Griffin's MD, Docket Entry No. 102, p. 10 (arguing that "[f]or the reasons explained in the Director Defendants' Motion to Dismiss and Defendant Norman M.K. Louie's Motion to Dismiss the

(continued...)

that Plaintiffs have pled specific facts sufficient to hold Griffin liable for the financial statements that he signed. See <u>Janus Capital Group, Inc. v. First Derivative Traders</u>, 131 S. Ct. 2296, 2302 (2011) ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

The court concludes, however, that as to statements made in press releases, Plaintiffs are relying on the group pleading doctrine — a doctrine abolished by the Fifth Circuit in <u>Southland</u>, 365 F.3d at 365. In <u>Southland</u> the Fifth Circuit held that the PSLRA requires plaintiffs to "enlighten *each defendant* as to his or her particular part in the alleged fraud," so that "corporate officers may not be held responsible for unattributed corporate statements solely on the basis of their titles." <u>Id.</u> Specific facts tying a corporate officer to a statement would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of the entire document or specific portion of the document containing the statement. <u>Id.</u> Plaintiffs have not pled with particularity facts capable of showing that statements made in any of the press releases about which they complain are attributable to Griffin. Instead, Plaintiffs attempt to hold Griffin responsible for

---

[77](...continued)
Amended Complaint, Plaintiffs have not alleged that any statement in those financial statements was false or misleading when made.").

-42-

unattributed corporate statements in the press releases based solely on his title as CFO.[78]  Accordingly, the court concludes that Plaintiffs have not sufficiently pled specific factual allegations linking Griffin to allegedly false and misleading statements in EXXI's press releases.

### (2)  Scienter

Griffin argues that "[a]s explained in the Director Defendants' Motion to Dismiss, Plaintiffs' impermissible attempt to plead scienter based solely on Defendants' positions within EXXI and alleged GAAP violations mandates dismissal of their Complaint."[79]  Griffin argues that the only allegations as to his scienter are that

> (1) his "net worth was dependent upon his investment in EXXI stock and options," Am. Compl. ¶ 42; *se also id.* ¶¶ 40-41; (2) he had an incentive to "protect his job," *id.* ¶ 42; and (3) he had access to unspecified "material non-public information," *e.g., id.* ¶¶ 57, 59.[80]

Griffin argues that Plaintiffs fail to allege that he sold any stock during the Class Period, and that Plaintiffs' factual allegations are internally inconsistent about his alleged

---

[78]*Id.* at 9 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 29 ¶ 128, p. 34 ¶ 157, and p. 36 ¶ 166).  See also *id.* at 10 n.2 (asserting that "[s]ince Griffin was the Company's CFO, it is far more likely that he provided the 'numbers' to [the employee who prepared the press releases] so that they could be incorporated in the Company's press releases").

[79]*Id.* at 10.

[80]*Id.* at 11.

motivations because they allege not only that his incentive was to protect his job, but also that he "'resigned over a disagreement regarding the Company's financial disclosures, including those related to its ultra-deep [water] investments and accounting for its acquisition of EPL.'"[81]  Asserting that Plaintiffs' theory of his scienter "rests on nothing more than baseless speculation, and is not 'at least as compelling as any opposing inference one could draw from the facts alleged,'"[82] Griffin argues that "[t]he far more compelling inference is that, to the extent there was any wrongdoing occurring within EXXI, [his] resignation is evidence that he was not a participant."[83]

Asserting that EXXI restated its financial statements for four years, Plaintiffs argue that the restatements are compelling evidence of Griffin's scienter because

> as EXXI's [CFO] — the senior officer directly responsible for assuring the accuracy of EXXI's financial reporting — Griffin undoubtedly knew the Company lacked the necessary documentation — i.e., it had no specific documents regarding the hedged items — to utilize hedge accounting under ASC Topic 815.  At the very least, Griffin was severely reckless in not knowing so.[84]

Plaintiffs also argue that the following allegations support a strong inference of Griffin's scienter:  (1) the amount of EXXI's

---

[81]Id. at 12 (quoting Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 10 ¶ 43).

[82]Id.

[83]Id.

[84]Plaintiffs' Opposition to Griffin's MD, Docket Entry No. 112, p. 11 (emphasis in original).

restatements was significant; (2) EXXI's hedging activities were unusually high; (3) Griffin knew or recklessly disregarded the fact that EXXI delayed recognizing impairment of assets that it acquired from EPL despite steadily declining oil and gas prices that caused EPL to write down those same assets ahead of EXXI; and (4) EXXI lost its entire investment in EPL in a year.[85]

A complaint for violation of federal securities laws "will survive [a motion to dismiss] . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Tellabs</u>, 127 S. Ct. at 2510. A defendant's signature on an SEC filing with false or misleading statements or omissions cannot by itself support a strong inference of scienter. <u>See</u> <u>Central Laborers' Pension Fund v. Integrated Electrical Services Inc.</u>, 497 F.3d 546, 555 (5th Cir. 2007) ("If we were to accept [this] proffered interpretation of Sarbanes—Oxley, scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.") (quoting <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1266 (11th Cir. 2006)). In <u>Central Laborers'</u> the Fifth Circuit adopted the Eleventh Circuit's test for when Sarbanes-Oxley certifications, <u>i.e.</u>, signatures on SEC filings, could support an

---

[85]<u>Id.</u> at 14-15 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 17 ¶¶ 75-76, pp. 42-43 ¶¶ 197-201, p. 46 ¶ 220.

inference of scienter.[86]  The "person signing the certification [must have] had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions."  Id.

In ArthroCare, 726 F. Supp. 2d at 716, an individual defendant confronted with media reports providing "blatant evidence" of the specific accounting fraud at issue nonetheless "continued to defend [the accounting] stridently and deny the allegations."  Although the plaintiffs in ArthroCare alleged accounting errors in eight quarterly SEC filings, and the defendant signed each filing, the court held that only the two quarterly filings immediately following the detailed media reports could support an inference of scienter.  Id. at 724.  In Seitel, 447 F. Supp. 2d at 693, the court held that the defendant's signature on SEC filings supported a strong inference of scienter because the plaintiffs alleged not only improper accounting practices but also:  (1) overstated

------

[86]In Central Laborers', 497 F.3d at 554, the Fifth Circuit explained that,

> [t]he Sarbanes-Oxley Act states that signing officers must certify that they are "responsible for establishing and maintaining internal controls [and] have designed such internal controls to insure that material information relating to the [company] and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the period reports are being prepared." 15 U.S.C. § 7241(a)4).

revenues of 15 percent for the year 2000 and 30 percent for the first 9 months of 2001; (2) memoranda and meeting minutes revealing that the defendants explicitly discussed the improper accounting methods and affirmatively chose to ignore potential problems; and (3) the dismissal of an auditor who confronted the defendants over the improper practices. Id.

Plaintiffs allege that Griffin signed SEC filings that contained false and misleading statements of EXXI's financial condition because EXXI misapplied the accounting standard for documenting use of cash flow hedge accounting. But "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information." Lovelace, 78 F.3d at 1020. To infer scienter from accounting errors, courts typically examine the magnitude, pervasiveness, and repetition of the errors; the simplicity and obviousness of the misapplied rules; and the defendant's apparent motives for misapplying these rules. See, e.g., ArthroCare, 726 F. Supp. 2d at 721 ("'[W]hen the number, size, timing, nature, frequency, and context of the misapplication [of accounting principles] or restatement are taken into account, the balance of the inferences to be drawn from such allegations may shift significantly in favor of scienter.").

Plaintiffs argue that the facts they have alleged raise a strong inference of scienter as to Griffin because EXXI misapplied two accounting standards, i.e., the standards for documenting the use of hedge accounting and for reporting asset impairment, the resulting restatements covered four years, and the magnitude of the restatements was significant. Plaintiffs also allege that Griffin was motivated to inflate EXXI's profitability to help EXXI qualify for listing on the NASDAQ Global Markets. While the parties dispute the simplicity and obviousness of the misapplied accounting standards, Plaintiffs' Amended Complaint does not allege facts capable of establishing either that the standards being violated were so clear and obvious as to make Griffin either knowingly deceptive or severely reckless in certifying EXXI's SEC filings, or severely reckless by not knowing that EXXI's accounting was improper. Plaintiffs' allegations regarding the magnitude of EXXI's misstated financials do not support a strong inference of scienter because "the magnitude of the error does not show that the existence of the error was clear when it was made," Schott v. Nobilis Health Corp., 211 F. Supp. 3d 936, 955 (S.D. Tex. 2016), and because EXXI's improper accounting did not uniformly benefit EXXI or consistently line up with a motive to skew the accounting results to favor EXXI's financial position.[87] See ArthroCare, 726

---

[87]See UHY's MD, Docket Entry No. 101, p. 16 (asserting without objection from Plaintiffs: "For fiscal years 2012 and 2013 the restated net income was higher than the originally reported net income."). See also UHY's Reply, Docket Entry No. 119, pp. 9-12.

F. Supp. 2d at 724; <u>Seitel</u>, 447 F. Supp. 2d at 693. Moreover, missing from Plaintiffs' Amended Complaint are any allegations of specific facts connecting Griffin to the accounting violations that led to the restatement of EXXI's financial statements. Nor are there any allegations that Griffin engaged in insider trading or stood to benefit personally from any of the alleged accounting errors. Plaintiffs offer no facts in support of their contention that Griffin signed the financial statements at issue with scienter other than the fact that, like the senior financial managers of every company, he had control over EXXI's accounting policies and procedures. <u>See Izadjoo v. Helix Energy Solutions Group, Inc.</u>, 237 F. Supp. 3d 492, 516 (S.D. Tex. 2017) (find no scienter for officers where there were no "glaring irregularities or red flags" to put them on notice of material misstatements and omissions in Sarbanes-Oxley certifications or earnings calls).

Plaintiffs cannot demonstrate scienter by relying either on Griffin's position on the Board, <u>Abrams</u>, 292 F.3d at 432, or on the fact that certain financial statements were restated. <u>See Central Laborers'</u>, 497 F.3d at 546 (restatement of financial data, by itself, does not create a strong inference of scienter). Plaintiffs' factual allegations make it more plausible or at least as plausible to infer that when signing the SEC filings at issue Griffin negligently relied on EXXI's accountants and auditors than to infer that he knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in EXXI's

financial statements.  See Tellabs, 127 S. Ct. at  2510; Central Laborers', 497 F.3d at 555.  See also Abrams, 292 F.3d at 433 (recognizing that accounting problems that lead to a restatement of a company's financials can "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action").  The court therefore concludes that Plaintiffs' factual allegations are not sufficient to raise a strong inference of scienter as to Griffin. Accordingly, Griffin's motion to dismiss the Exchange Act claims asserted against him will be granted and those claims will be dismissed with prejudice.

(c)  Defendant Louie

Asserting that he joined EXXI's Board on December 15, 2014, and that his term expired on December 1, 2015,[88] Louie argues that the Exchange Act claims asserted against him should be dismissed because he did not make many of the alleged misstatements, because Plaintiffs allege no facts requiring disclosure of his personal loan to Schiller, and because Plaintiffs rely on group pleading and fail to plead facts capable of raising a strong inference of scienter or loss causation.[89]  Plaintiffs respond that Louie's MD should be denied because he knew — but failed to disclose — that he

_____

[88]Louie's MD, Docket Entry No. 103, p. 6.  See also Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 10 ¶¶ 44-45.

[89]Louie's MD, Docket Entry No. 103, p. 9.

had loaned $3 million to Schiller, because he signed EXXI's 2014 amended Annual Report which had to be restated, and because scienter and loss causation are adequately pled.[90]

### (1)  Alleged Misstatements and Omissions

Regarding Louie plaintiffs allege:

22.  From EXXI's founding in 2005 through and including October 15, 2015, Defendant Schiller . . . served as Chairman of the Board.  He was stripped of that title by the Board on October 9, 2015, following an internal investigation that found he borrowed funds in 2007, 2009, and 2014 from personal acquaintances or their affiliates, certain of whom provided the Company and certain of its subsidiaries with services, and in 2014 he personally borrowed $3 million from Defendant Norman Louie ("Louie"), before Louie was appointed to the Board effective December 15, 2014.  At the time of the loan from Louie, Louie was a managing director at Mount Kellet Capital Management, LP, one of the Company's largest shareholders.  The internal investigation was prompted by an SEC inquiry.

. . .

44.  Defendant Louie was appointed to the Board, effective December 15, 2014, by Defendant Schiller and the rest of the Board without election by shareholders, to stand for election by shareholders at the 2015 annual meeting.  When Defendant Schiller's secret loan from Defendant Louie was discovered, the Board determined not to nominate Defendant Louie for election as a director at the 2015 annual meeting.

45.  During his short tenure on the Board, Defendant Louie signed the Company's Amended 2014 annual report filed on Form 10-K/A with the SEC on December 23, 2014. As a signatory of the annual report issued in the name of the Company and not attributed to an individual author,

_____

[90]Plaintiffs' Memorandum of Law in Opposition to Defendant Norman M.K. Louie's Motion to Dismiss ("Plaintiffs' Opposition to Louie's MD"), Docket Entry No. 113, pp. 7-12.

Louie is responsible for the content of the annual report he signed.

. . .

269. In the Current Report on Form 8-K, filed with the SEC on December 15, 2014, announcing Defendant Louie's appointment to the Board, Defendants caused EXXI to state that there were no related party transactions between Louie and the Company or any of its subsidiaries that would require disclosure pursuant to Item 404(a) of Regulation S-K, 17 C.F.R. ¶ 229.404(a).

270. That statement in the Current Report on Form 8-K was materially incomplete and misleading because it failed to disclose that (a) Louie had loaned Defendant Schiller $3 million and the loan was outstanding at the time the Form 8-K was filed, (b) Louie was at least indirectly interested in the hedge fund MK's ownership of EXXI common stock, (c) Louie was at least indirectly interested in the M21K partnership between the Company and MK, and (d) Louie was at least indirectly interested in M21K's $123 million asset purchase from EXXI in 2014. All of those transactions were related party transactions requiring disclosure pursuant to Item 404(a) of Regulation S-K.[91]

Louie does not argue the Form 10-K/A he signed that was ultimately restated did not contain statements that were false and misleading.[92]   The court concludes, therefore, that the plaintiffs have plead specific facts sufficient to hold Louie liable for the financial statement that he signed. See Janus, 131 S. Ct. at 2302 ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

---

[91]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 6 ¶ 22, p. 10 ¶¶ 44-45, and p. 56 ¶¶ 269-70.

[92]Id. at 10 ¶ 45.

Louie argues, however, that Plaintiffs' allegations fail to state an Exchange Act claim against him for statements made in the December 15, 2014, Form 8-K because he did not sign that form and cannot be held liable for the statements contained therein, and because the statements in the Form 8-K are all true as the transactions at issue were not related-party transactions that Regulation S-K, 17 C.F.R. ¶ 229.404(a) require to be disclosed.[93] Plaintiffs do not dispute that Louie did not sign the Form 8-K filed on December 15, 2014, and therefore cannot be held liable as a maker of the statements contained therein. See Kerr v. Exobox Technologies Corp., Civil Action No. H-10-4221, 2012 WL 201872, at *11 (S.D. Tex. 2012) (defendant not liable under Rule 10b-5 for allegedly false statements in company's SEC filings, even if he supplied the statements at issue, because he did not sign the filings). See also Janus, 131 S. Ct. at 2302 ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Nor do Plaintiffs dispute that the transactions at issue are not "related party" transactions that Regulation S-K, 17 C.F.R. ¶ 229.404(a) require to be disclosed.[94]

---

[93]Louie's MD, Docket Entry No. 103, pp. 7-8.

[94]Id. at 7-9 (arguing that the transactions at issue were either not "related party" transactions, or that Louie did not have a material interest in them).

Citing In re Bristol Myers Squibb Co. Securities Litigation, 586 F. Supp. 2d 148, 160 (S.D.N.Y. 2008), and City of Monroe Employees Retirement System v. Bridgestone Corp., 399 F.3d 651, 670 (6th Cir. 2005), plaintiffs argue, however, that their Exchange Act claims against Louie should not be dismissed because the Form 8-K "statements regarding no related party transactions, which may have been literally true under the narrow definition of 'related party,' were, if not literally false, highly misleading,"[95] and because the Form 10-K/A that Louie signed was one of EXXI's annual reports that had to be restated.[96] Plaintiffs argue that Louie's loan to Schiller and involvement with entities that owned EXXI stock

> should have been disclosed to investors because they adversely impacted Schiller's and Louie's ability to manage the Company prudently and to ensure that the Company's public disclosures were truthful. Schiller's dire financial circumstances were a strong motive for him to mislead investors — precisely as he did. Likewise, Louie was highly motivated to inflate the value of EXXI stock, which secured his secret loan to Schiller, if only to reduce his risk of loss if Schiller defaulted on the loan.[97]

It is undisputed that "[w]hen an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." Chiarella v. United States, 100 S. Ct. 1108, 1118 (1980) (discussing disclosure requirements in the context of insider

---

[95]Plaintiffs' Opposition to Louie's MD, Docket Entry No. 113, p. 7.

[96]Id. at 9-10.

[97]Id. at 8.

trading and finding that silence is only fraudulent if there exists a duty to disclose).  The <u>Bristol Myers</u> and <u>Bridgestone</u> cases on which Plaintiffs rely stand for the well established principle that once a party makes a disclosure, even if it is literally true, the party is under a duty to speak the full truth.  <u>See</u> <u>Bristol Myers</u>, 586 F. Supp. 2d at 160 ("even an entirely truthful statement may provide a basis for liability if material omissions related to the content of the statement make it — or other statements made — materially misleading"); <u>Bridgestone</u>, 399 F.3d at 670 ("If a company 'chooses to volunteer such information,' though, 'its disclosure must be full and fair, and courts may conclude that the company was obliged to disclose additional material facts . . . to the extent that the volunteered disclosure was misleading'").  <u>See also</u> <u>Rubinstein</u>, 20 F.3d at 170 ("'a duty to speak the full truth arises when a defendant undertakes a duty to say anything'").  But the statements Plaintiffs allege were misleading due to Louie's failure to disclose his loan to Schiller and his relationship to entities that owned EXXI stock are statements made by EXXI on the Form 8-K signed by Griffin; not statements made by Louie.

Plaintiffs fail either to cite any authority or to allege any facts capable of establishing that Louie had a duty to disclose information needed to correct the allegedly misleading statements made by EXXI and Griffin.  <u>See</u> <u>In re Franklin Bank Corp. Securities Litigation</u>, 782 F. Supp. 2d 364, 398 (S.D. Tex. 2011), <u>aff'd</u>, 464 F. App'x 334 (5th Cir. 2012) (plaintiffs failed to allege facts capable of establishing that defendant was under a duty to correct

a misleading statement made by a third-party analyst). Plaintiffs also fail to allege facts capable of establishing that Louie was the source of the information for the related-party statements in the Form 8-K about which Plaintiffs complain, that Louie knew those statements had been made in the Form 8-K, that those statements were material to the Plaintiffs' decision to purchase or to hold (i.e., not to sell) EXXI stock, or that those statements imposed upon Louie a duty to disclose the existence of his loan to Schiller or his relationship to entities that owned EXXI stock. See In re Securities Litigation BMC Software, Inc., 183 F. Supp. 2d 860, 871 & n.21 (S.D. Tex. 2001) (recognizing that a party generally has no liability for misleading claims made about it by a third party and no obligation to correct such statements, but that a party may be liable for allegedly misleading statements made by a third-party if sufficiently involved in preparation of those statements). Absent such allegations Plaintiffs may not maintain an Exchange Act claim against Louie arising from either the related-party statements contained in EXXI's December 15, 2014, Form 8-K, or from Louie's failure to disclose his loan to Schiller or his position with respect to entities that owned EXXI stock. See Basic Inc. v. Levinson, 108 S. Ct. 978, 987 n.17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b-5.").

### (2) Scienter

Plaintiffs' failure to allege facts capable of establishing that Louie had a duty to disclose his loan to Schiller or his

position with respect to entities that owned EXXI stock precludes Plaintiffs from raising a strong inference of scienter with respect to allegedly misleading statements and/or omissions arising from the Form 8-K that EXXI filed on December 15, 2014. See In re Centerline Holdings Co. Securities Litigation, 678 F. Supp. 2d 150, 161-62 (S.D.N.Y. 2009) (defendants did not act with scienter regarding omissions "when there was no duty to disclose in the first place"). Nor have Plaintiffs alleged facts capable of raising a strong inference of scienter with respect to the Form 10-K/A that Louie signed in December of 2014 shortly after being named to the Board because missing from Plaintiffs' Amended Complaint are any allegations of specific facts connecting Louie to the accounting violations that led to the restatement of EXXI's financials. Plaintiffs offer no facts in support of their contention that Louie signed the Form 10-K/A at issue with scienter other than the fact that he was allegedly motivated to inflate the market value of EXXI because his personal loan to Schiller was purportedly secured by Schiller's EXXI shares. However, the law in this circuit has long been well established that scienter in a particular case may not be based solely on motives universal to all corporate executives such as the desire to maintain a high stock price. See Indiana Electrical, 537 F.3d at 544. Plaintiffs' factual allegations make it more plausible or at least as plausible to infer that when signing the Form 10-K/A at issue Louie negligently relied on EXXI's accountants and auditors than to infer

that he knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in EXXI's financial statements. See Tellabs, 127 S. Ct. at 2510; Central Laborers', 497 F.3d at 555. See also Abrams, 292 F.3d at 433 (recognizing that accounting problems that lead to a restatement of a company's financials can "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action"). The court concludes therefore that Plaintiffs' factual allegations are not sufficient to raise a strong inference of scienter as to Louie.

### (3) Loss Causation

Louie argues that even if Plaintiffs had alleged facts capable of establishing all the elements of their Exchange Act claims, they "have not alleged, nor can they, that there was any loss associated with this loan or its disclosure."[98] Louie argues that under Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1633-34 (2005),

> Plaintiffs must allege "that the market reacted negatively to a corrective disclosure, which revealed the falsity of [the Company's] previous representations. . . ." . . . The personal loan from Mr. Louie to Mr. Schiller was disclosed on September 29, 2015. See Ex. C Energy XXI Ltd, Annual Report (Form 10-K) (Sept. 29, 2015) at 43. Immediately thereafter, EXXI's price increased. See Ex. D Energy XXI Stock Prices (showing seven consecutive trading days of increases, reaching a high of $2.28 on October 8, 2015). Even assuming there was a prior misstatement regarding the personal loan — which there was not — without any alleged loss caused by the disclosure of Mr. Louie's personal

---

[98]Louie's MD, Docket Entry No. 103, p. 9.

loan, all of Plaintiffs' claims relating to the personal loan must fail.[99]

Plaintiffs respond only that they "have sufficiently alleged loss causation to withstand his motion to dismiss."[100]

Under the PSLRA Plaintiffs must prove that a defendant's act or omission alleged to have violated federal securities laws "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In Dura Pharmaceuticals, 125 S. Ct. at 1633-34, the Supreme Court held that loss causation incorporates traditional elements of proximate causation and economic loss. See Amgen Inc. v. Connecticut Retirement Plans and Trust Funds, 133 S. Ct. 1184, 1192 (2013) (confirming that loss causation continues to be an element of a claim under § 10(b)). Loss causation refers to a direct link between the misstatement and a plaintiff's loss, and generally requires a corrective disclosure relating to the challenged representations, followed by a decline in the stock's price. See Catogas v. Cyberonics, Inc., 292 F. App'x 311, 314 (5th Cir. 2008) ("Plaintiffs must allege . . . that the market reacted negatively to a corrective disclosure, which revealed the falsity of [defendant's] previous representations regarding the accounting for its stock options."). Because Plaintiffs fail to allege in their Amended Complaint or to argue in

---

[99]Id.

[100]Plaintiffs' Opposition to Louie's MD, Docket Entry No. 113, p. 12.

their brief in opposition to Louie's motion to dismiss that a corrective disclosure about Louie's loan to Schiller caused EXXI's stock price to fall, Plaintiffs have failed to plead loss causation.

Because Plaintiffs have failed to allege facts capable of establishing that Louie made an actionable misstatement or omission, with scienter, that caused the loss of which the Plaintiffs complain, Louie's motion to dismiss the Plaintiffs' Exchange Act claims will be granted, and those claims will be dismissed with prejudice.

### (d) Defendant Schiller

Schiller argues that the Exchange Act claims asserted against him should be dismissed because Plaintiffs' Amended Complaint fails to allege facts capable of establishing that the statements attributed to him were false or misleading, or that he acted with scienter. Schiller also joins the arguments made by Louie and by the Director Defendants that Plaintiffs' Amended Complaint fails to allege facts capable of establishing loss causation, or that his loans from Louie were "related party transactions."[101]

### (1) Alleged Misstatements and Omissions

Plaintiffs argue that

[a]s Chairman and CEO, Schiller signed all of EXXI's Annual Reports including its 2011, 2012, 2013, and 2014 Annual Reports. ¶ 21. On September 8, 2015, the Company

---

[101]Schiller's MD, Docket Entry No. 104, p. 6.

announced that all four annual reports should not be relied upon and had to be restated to eliminate hedge accounting from them. ¶¶ 83 & 89. The Company's Annual Reports for 2012, 2013, and 2014 also included materially false or misleading information about the Company's ultra-deep drilling activities (¶¶ 124-26, 132, & 242), and the 2014 Annual Report included materially false or misleading information about EXXI's acquisition of EPL (¶¶ 172 & 174).

And *third*, Schiller is tied directly to the Company's misstatements regarding its oil and gas reserves in EXXI's annual and quarterly financial statements. As Plaintiffs allege, Schiller repeatedly pressured Company employees to include unsubstantiated estimates of natural gas reserves purportedly discovered as a result of EXXI's ultra-deep drilling program in the reserves reported in the quarterly and annual financial statements. ¶ 141. That pressure undermined the integrity of the Company's financial statements. ¶ 142.[102]

Plaintiffs argue that Schiller made false and misleading statements on three matters: EXXI's ultra-deep oil drilling activities, EXXI's accounting for the EPL acquisition, and EXXI's financial condition resulting from its use of cash flow hedge accounting.[103] Schiller argues that the statements Plaintiffs attribute to him are not actionable because Plaintiffs have failed to allege facts capable of proving that the statements were, in fact, false or misleading.[104] Schiller also argues that the statements for which Plaintiffs seek to hold him liable are not actionable because they

---

[102]*Id.* at 24-25 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 6 ¶ 21, pp. 18-20 ¶¶ 83 & 89, pp. 27-29 ¶¶ 124-26 & 132, pp. 31-32 ¶¶ 141-42, p. 37 ¶¶ 172 & 174, and p. 51 ¶ 242).

[103]Plaintiffs' Memorandum of Law in Opposition to Defendant John D. Schiller's Motion to Dismiss Amended Complaint ("Plaintiffs' Opposition to Schiller's MD"), Docket Entry No. 114, pp. 9-16.

[104]Director Defendants' MD, Docket Entry No. 105, p. 11.

were generally forward looking statements of opinion or belief, and because Plaintiffs have failed to plead facts capable of establishing that he did not genuinely hold the stated opinion or belief, that the opinion or belief contained embedded misstatements of fact, or that he omitted material facts about his inquiry into or knowledge of information that would conflict with what a reasonable investor would have understood from his comments.[105] See Omnicare, 135 S. Ct. at 1327-29.

### (i) Statements About EXXI's Ultra-Deep Drilling Activities Are Not Actionable

Plaintiffs argue that they have plausibly alleged that Schiller either made or caused EXXI to make false and misleading statements regarding EXXI's ultra-deep drilling activities on five separate occasions: (1) a November 7, 2012, Press Release regarding the Davy Jones well production; (2) EXXI's 2013 Annual Report filed with the SEC on August 21, 2013; (3) comments made at an Oil & Gas conference on October 17, 2013; (4) EXXI's quarterly report for the second quarter of fiscal year 2014 filed with the SEC on Form 10-Q on February 7, 2014; and (5) EXXI's quarterly report for the third quarter of fiscal year 2014 filed with the SEC on Form 10-Q on May 1, 2014.[106] Plaintiffs argue that

---

[105]Id. at 12-13.

[106]Plaintiffs' Opposition to Schiller's MD, Docket Entry No. 114, pp. 10-11, 18-19 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 6 ¶ 21, pp. 28-31 ¶¶ 127-29, 132-34, 136-37).

as Schiller knew, the Company's ultra-deep drilling
activities were largely unsuccessful — only one of 15
target wells identified by the joint venture ever
produced any oil (¶ 139) — and he lacked any basis for
the upbeat statements he repeatedly made. Plaintiffs
substantiate their allegations that Defendants knowingly
grossly overstated the status of the ultra-deep drilling
activities with information provided by a former EXXI
employee who was directly responsible for managing EXXI's
reserves and the Company's reserve accounting at the time
of the Davy Jones discovery. ¶ 140. In that capacity,
the former employee was well positioned to know whether
the Company possessed information to substantiate the
stated reserves. That former employee said that when the
Davy Jones 2 well was tested, it only produced *water*, not
natural gas. . .[107]

(A)    November 7, 2012, Press Release

Regarding the November 7, 2012, Press Release Plaintiffs

allege:

On November 7, 2012, EXXI issued a press release in which
Defendants caused the Company to state as follows:

Within the shallow-water ultra-deep exploration
program with McMoRan, the Davy Jones discovery
well is proceeding toward first production and
the company is participating in the Blackbeard
West #2, Lomand North and Lineham Creek wells.

The Davy Jones discovery well, the first
shallow-water, ultra-deep sub-salt completion
on the Gulf of Mexico shelf, is being
completed. The wellbore was cleaned out to
enable testing of all 165 feet of perforated
sands in the Wilcox and the final steps of
installing the wellhead are underway. Once
these steps are complete, flow testing is
expected to commence. . .

Completion and testing of the Davy Jones
offset appraisal well (Davy Jones #2) is

---

[107]<u>Id.</u> at 19 (citing Plaintiffs' Amended Complaint, Docket
Entry No. 97, p. 31 ¶¶ 138-40).

> expected to commence following review of
> results from the Davy Jones discovery well.[108]

Missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing that any of the statements in the November 7, 2012, Press Release were false or misleading when made, or that they were attributed to, formulated, signed, or adopted by Schiller. Instead, Plaintiffs merely allege that "[o]nly one of 15 target wells identified by the joint venture ever produced oil."[109] But the fact that EXXI's ultra-deep drilling activities were ultimately not successful is not probative of falsity. See Carlton v. Cannon, 184 F. Supp. 3d 428, 469 (S.D. Tex. 2016) ("[T]he plaintiffs have at most alleged fraud by hindsight. Courts treat this as insufficient because it is based on 'the fact that something turned out badly must mean [the] defendant[s] knew earlier that it would turn out badly.'"). Plaintiffs fail to allege contemporaneous facts capable of showing that Schiller knew earlier material information that he chose not to disclose until later. Id. (citing Abrams, 292 F.3d at 433 ("company officials should not be held responsible for failure to foresee future events"). Because Plaintiffs fail to allege facts capable of establishing either that statements contained in the November 7, 2012, Press Release were false or that any false statements are

---

[108]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 28-29, ¶ 127.

[109]Id. at 31 ¶ 139.

attributable to Schiller, and because Plaintiffs neither allege nor argue that statements contained in the November 7, 2012, Press Release misled the market, the statements made in that press release are not actionable under the Exchange Act. See <u>In re</u> <u>Azurix Corp. Securities Litigation</u>, 198 F. Supp. 2d 862, 882 (S.D. Tex. 2002) (holding that statements were "not actionable because plaintiffs have not pleaded any facts indicating that the statements were untrue"), <u>aff'd sub nom. Rosenzweig v. Azurix</u> <u>Corp.</u>, 332 F.3d 854 (5th Cir. 2003); <u>Southland Securities Corp. v.</u> <u>INSpire Insurance Solutions, Inc.</u>, 365 F.3d 353, 365 (5th Cir. 2004) (holding that facts tying an officer or director to a statement "would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document" containing the false or misleading statement).

### (B) EXXI's 2013 Annual Report

Regarding EXXI's 2013 Annual Report, Plaintiffs allege:

> In its 2013 Annual Report filed with the SEC on August 21, 2013, Defendants caused the company to state that "work is ongoing to establish commercial production" from Davy Jones No. 1. However, when the statement was made, Defendants knew that Davy Jones No. 1 was not commercially viable.[110]

Plaintiffs also allege that

> [a]s Chairman of the Board and Chief Executive Officer of EXXI, Defendant Schiller signed the Company's annual reports filed with the SEC on Form 10-K and 10-K/A. As

---

[110]<u>Id.</u> at 29-30 ¶ 132.

a signatory of the annual reports issued in the name of the Company and not attributed to an individual author, Schiller is responsible for the content of the annual reports he signed.[111]

Missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing that on August 21, 2013, when EXXI's 2013 Annual Report was filed, work was not ongoing to establish commercial production from Davy Jones No. 1, that Schiller knew or did not genuinely believe that work was ongoing to establish commercial production from Davy Jones No. 1, or that Schiller had contradictory information, i.e., information that Davy Jones No. 1 was not commercially viable. Absent allegations of such facts, the statements about ultra-deep drilling activities in EXXI's 2013 Annual Report are not actionable against Schiller. See In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d at 882.

(C) Statements at Oil & Gas Conference

Regarding Schiller's October 17, 2013, statements at an Oil & Gas Conference, Plaintiffs allege that

[a]t an Oil & Gas conference on October 17, 2013, Schiller said that Davy Jones No. 1 was "too deep and too narrow to flow gas" but Schiller falsely stated that Davy Jones No. 2 had a "high probability" of producing and that completion of Davy Jones 2 was expected to start in December, 2013.[112]

Plaintiffs allege that

Defendant Schiller's "high probability" statement was false and misleading when it was made. As Schiller knew

---

[111]Id. at 6 ¶ 21.

[112]Id. at 30 ¶ 133.

on October 17, 2013, there was no objective or empirical
evidence, such as test results or preliminary production
data, to support Schiller's "high probability" statement
at that time (or ever). Thus, on that date, Schiller
lacked any reasonable basis for his "high probability"
statement.[113]

Plaintiffs also allege that

> [a]ccording to a former EXXI employee directly
> responsible for managing EXXI's reserves and the
> Company's reserve accounting at the time of the Davy
> Jones discovery, when the Davy Jones No. 2 well was
> tested, it only produced water, not natural gas. This
> material adverse fact, though known by EXXI and the
> Individual Defendants, was not timely disclosed to
> investors, including Plaintiffs in particular.[114]

Missing from Plaintiffs' Amended Complaint are allegations of
fact capable of establishing that Schiller's statements that Davy
Jones No. 2 had a "high probability" of producing or that
completion of Davy Jones No. 2 was expected to start in December of
2013, were false, or that when Schiller made these statements he
either knew that they were false or did not genuinely believe them.
Plaintiffs' assertion that Schiller lacked any reasonable basis for
his "high probability" statement because he had no objective or
empirical evidence to support that statement is unavailing because
Plaintiffs fail to allege particularized facts capable of
establishing that objective or empirical evidence existed that
contradicted that statement. In Rosenzweig, 332 F.3d at 870, the
Fifth Circuit reaffirmed its prior recognition in Rubinstein, 20
F.3d at 169, that "[s]imply alleging that the predictive statements

---

[113]Id. ¶ 134.

[114]Id. at 31 ¶ 140.

. . . did not have a reasonable basis — that is, that they were negligently made — would hardly suffice to state a claim under Rule 10b-5."

Plaintiffs' reference to an unidentified former EXXI employee in support of their allegations that when Davy Jones No. 2 was tested, it produced water, not gas, is unavailing because Plaintiffs have not alleged either when the test occurred or that it occurred before Schiller made the statements alleged to be false and misleading at the Oil & Gas Conference on October 17, 2013. Nor have plaintiffs alleged any facts capable of establishing that Schiller knew about the test, knew the test demonstrated that Davy Jones No. 2 was incapable of producing gas, or knew that the test necessarily meant that completion of Davy Jones No. 2 was not expected to start in December of 2013. Because Plaintiffs do not allege facts capable of establishing that Schiller's statements at the Oil & Gas Conference on October 17, 2013, were false, or that Schiller either knew those statements were false or did not genuinely believe them, and because Plaintiffs neither allege nor argue that any of those statements misled the market, Schiller's statements at the Oil & Gas Conference on October 17, 2013, are not actionable under the Exchange Act. See In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d at 882.

(D)   Form 10-Qs Filed in Early 2014

Regarding statements on EXXI's Form 10-Q filings for the second and third quarters of fiscal year 2014, Plaintiffs allege:

136. In EXXI's quarterly report for the period ended December 31, 2013, filed on Form 10-Q with the SEC on February 7, 2014, Defendants caused the Company to state that "work is ongoing to establish commercial production" from Davy Jones 1 and that "[o]perations to commence completion of the Davy Jones No. 2 well are expected during calendar year 2014."

137. In EXXI's quarterly report for the period ended March 31, 2014, filed on Form 10-Q with the SEC on May 1, 2014, Defendants failed to mention Davy Jones No. 1, but maintained that Davy Jones No. 2 was "in the process of being completed."[115]

Plaintiffs argue that the statement in the Form 10-Q filed on February 7, 2014, that "work is ongoing to establish commercial production" from Davy Jones No. 1 was false because Schiller had stated at an October 17, 2013, Oil & Gas Conference that Davy Jones No. 1 was "too deep and too narrow to flow gas."[116] Schiller replies that Plaintiffs have not alleged any facts capable of establishing that statements in the Form 10-Q filed on February 7, 2014, were false or misleading.[117] Asserting that Plaintiffs have selectively cited only a portion of the Form 10-Q filed on February 7, 2014, Schiller argues that when read in context together with the surrounding statements, the statement that work was "ongoing to establish commercial production from Davy Jones 1," which plaintiffs allege is false and misleading because it

---

[115]Id. at 30-31 ¶¶ 136-37.

[116]Plaintiffs' Opposition to Schiller's MD, Docket Entry No. 114, pp. 10-11.

[117]Defendant John D. Schiller, Jr.'s Reply in Support of His Motion to Dismiss the Amended Complaint ("Schiller's Reply"), Docket Entry No. 122, pp. 12-13.

conflicts with the statement he made on October 17, 2013, that Davy Jones No. 1 is too deep and too narrow to flow gas is, in fact, consistent with his October 17, 2013, statement. Schiller explains that Plaintiffs

> omit an important sentence in the February 7, 2014 Form 10Q filing in which the company truthfully disclosed that "work is ongoing to establish commercial production" from Davy Jones 1. Immediately following that sentence, the company stated in the 10Q: "The operator [Freeport McMoRan] is developing a fit for purpose fracture stimulation process" for Davy Jones 1."[118]

In pertinent part the Form 10-Q filed on February 7, 2014, states:

> *Davy Jones.* As previously reported, our operating partner, Freeport McMoRan, has drilled two wells in the Davy Jones field. The Davy Jones No. 1 well is located on South Marsh Island Block 230 in 19 feet of water and work is ongoing to establish commercial production from the well. The operator currently is developing a fit for purpose fracture stimulation process. The Davy Jones No. 2 offset appraisal well, located two and a half miles southwest of Davy Jones No. 1, confirmed 120 net feet of potential pay in multiple Wilcox sands, indicating continuity across the major structural features of the Davy Jones prospect, and also encountered 192 net feet of potential hydrocarbons in the Tuscaloosa and Lower Cretaceous carbonate sections. Operations to commence completion of the Davy Jones No. 2 well are expected during calendar year 2014.[119]

---

[118]*Id.* at 13 (citing Energy XXI (Bermuda) Limited, Form 10-Q for the quarterly period ended December 31, 2013, Exhibit 2 to Declaration of David M. Sheeren, Docket Entry No. 122-3).

[119]Energy XXI (Bermuda) Limited, Form 10-Q for the quarterly period ended December 31, 2013, p. 35, Exhibit 2 to Declaration of David M. Sheeren, Docket Entry No. 122-3, p. 42. The court may properly consider the full section of this Form 10-Q at this stage of the case because in securities cases courts may take judicial notice of the contents of public disclosure documents that are
<span style="float:right">(continued...)</span>

Missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing that when the Form 10-Q was filed on February 7, 2014, the work to complete Davy Jones No. 1 was not still ongoing, that the operator was not attempting to develop a "fit for purpose fracture stimulation process" to that well, or that objective or empirical evidence existed that contradicted the statement that Plaintiffs allege was false. Because Plaintiffs do not allege facts capable of establishing that the statement that "work is ongoing to establish commercial production" from Davy Jones No. 1 made in the Form 10-Q filed on February 7, 2014, was false, because Plaintiffs neither allege nor argue that Schiller did not genuinely believe that statement or had information that contradicted it, and because Plaintiffs neither allege nor argue that the statement about the Davy Jones No. 1 well misled the market, that statement will not support a claim against Schiller under the Exchange Act. See In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d at 882.

Plaintiffs argue that the statements that "[o]perations to commence completion of the Davy Jones No. 2 well are expected during calendar year 2014" made in the Form 10-Q filed on

---

[119](...continued)
required by law to be filed and are actually filed with the SEC with the caveat that these documents may be considered only for the purpose of determining what statements they contain. See Lovelace, 78 F.3d at 1018 & n.1. See also Lone Star Fund V (U.S.), 594 F.3d at 387 (holding that when considering a motion to dismiss courts may consider documents that are "central to the claim and referenced by the complaint").

February 7, 2014, and that Davy Jones No. 2 was "in the process of being completed" made in the Form 10-Q filed on May 1, 2014, were false because by 2014 specialized production equipment used for ultra-deep well production had been removed from Davy Jones No. 2 and relocated to a different site, and because an unidentified former EXXI employee has allegedly provided information that when Davy Jones No. 2 was tested, it produced water, not gas.[120] These allegations are not sufficient to state a claim for violation of the Exchange Act against Schiller because Plaintiffs have failed to allege facts capable of establishing when the specialized equipment was removed from the Davy Jones No. 2 site or even that it was removed from the site before EXXI filed the Form 10-Qs at issue on February 7, 2014, and May 1, 2014. Nor have Plaintiffs alleged facts capable of establishing the type of specialized equipment that was removed, that removal of the equipment necessarily meant the Davy Jones No. 2 well could not be completed, or that when the statements were made Schiller did not genuinely believe them or had information that contradicted them. Plaintiffs have similarly failed to allege facts capable of establishing when the test that allegedly produced water instead of gas occurred or even that it occurred before EXXI filed the Form 10-Qs at issue on February 7, 2014, and May 1, 2014. Nor have Plaintiffs alleged any facts

---

[120]Plaintiffs' Opposition to Schiller's MD, Docket Entry No. 114, p. 11 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 31 ¶¶ 139-40).

capable of establishing that Schiller knew about the test, knew the test demonstrated that Davy Jones No. 2 was incapable of producing gas, or knew that the test would necessarily lead to the cessation of ongoing efforts to complete Davy Jones No. 2. Absent factual allegations capable of establishing that when EXXI filed the Form 10-Qs at issue on February 7, 2014, and May 1, 2014, operations to commence completion of the Davy Jones No. 2 well were not expected during calendar year 2014, and that when EXXI filed the Form 10-Q filed on May 1, 2014, Davy Jones No. 2 was not "in the process of being completed," or that Schiller knew either that work was not ongoing on that well or that the well was not capable of producing gas, Schiller cannot be held liable under the Exchange Act for the allegedly false statements regarding Davy Jones No. 2 contained in EXXI's Form 10-Qs filed on February 7, 2014, or May 1, 2014. See In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d at 882.

### (ii) Statements About EXXI's Accounting For The EPL Acquisition Are Not Actionable

Asserting that Schiller caused EXXI to buy EPL in 2014 to turn around the Company's stagnant growth and sagging stock price,[121] Plaintiffs argue that

> [a] year earlier, the Company decided that EPL was overpriced. ¶¶ 149 & 160. However, Schiller was so desperate to deliver any purportedly good news to the

---

[121]Id. at 19-20 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 33 ¶ 147). See also id. at 11-15.

market that he rushed the Company to complete the $2 billion purchase — its largest by far — without conducting any due diligence. ¶ 153. The haste in which Schiller forced EXXI to buy EPL was matched by the haste in which the purchase soured: less than a year after buying EPL, the assets EXXI acquired had become worthless. ¶¶ 220-21.

After EXXI acquired EPL, the Company and its subsidiary reported financial results side-by-side. Quarter after quarter, EPL wrote down assets as impaired, only to have EXXI delay doing so by one quarter. Each time, EXXI wrote down the exact same impairment charge one quarter after EPL did so. EXXI has never explained the reason for its delayed recognition of the impairment charge.[122]

Plaintiffs' allegations that Schiller rushed the EPL acquisition, caused EXXI to overpay for EPL, and was so desperate to bring good news to the market that he failed to do any due diligence, are not supported by allegations of particularized facts capable of establishing that any statements about the EPL acquisition attributable to Schiller were false or misleading, or that Schiller failed to disclose information needed to make his EPL statements not misleading. Even assuming that such facts were pled with specificity, the "failure to engage in due diligence before closing an acquisition does not automatically support an inference of fraud." Schiller v. Physicians Resource Group, Inc., 2002 WL 318441, *11 (N.D. Tex. February 26, 2002) (citing Brogen v. Pohlad, 933 F. Supp. 793, 799 (D. Minn. 1995) (failing "to adequately investigate the merits of a potential acquisition and

_____

[122]Id. See also Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 32-49 ¶¶ 144-230.

subsequent steps to remedy that omission may give rise to a claim for negligence; but it cannot support a claim for securities fraud")).

Plaintiffs' allegations that Schiller can be held liable under the Exchange Act for false or misleading statements because EXXI recognized impairment charges for EPL one quarter after EPL did so without explaining the reason for its delayed recognition, are not supported by allegations of particularized fact. Missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing the relevant accounting standards, how those standards were violated, or that Schiller knew or ignored glaring red flags that statements about EPL attributable to him were false or misleading when made. Also missing from Plaintiffs' Opposition to Schiller's MD is any argument or authority for Plaintiffs' contention that a corporate parent has a duty to explain why its accounting for impairment of a subsidiary's assets differs from the subsidiary's own accounting for the same assets. See North Collier Fire Control and Rescue District Firefighter Pension Plan and Plymouth County Retirement Association v. MDC Partners, Inc., No. 15 Civ. 6034 (RJS), 2016 WL 5794774, *3, 9-11, 24 (S.D.N.Y. 2016) (dismissing § 10(b) claim that rested on allegations of how management of parent company should have tested and impaired goodwill related to subsidiary). See also Harris v. Amtrust Financial Services, Inc., 135 F. Supp. 3d 155, 171 (S.D.N.Y. 2015) ("The fact that Lead Plaintiff cannot tick and tie the loss and

loss adjustment expense reported in AmTrust's consolidated financial statement to the losses its individual subsidiaries reported to insurance regulators, without more, does not plausibly allege a misstatement."). Because Plaintiffs do not allege facts capable of establishing that any of EXXI's statements about EPL were false, or that EXXI had a duty to explain the differences between its accounting for EPL's goodwill impairment and EPL's own accounting for impairment of its assets; because Plaintiffs fail to allege facts capable of establishing that Schiller either knew that any statements about EPL attributable to him were false, or did not genuinely believe any such statements; and because Plaintiffs' neither allege nor argue that any statements about EPL misled the market, the EPL statements about which Plaintiffs complain are not actionable against Schiller under the Exchange Act. See In re Azurix Corp. Securities Litigation, 198 F. Supp. 2d at 882.

> (iii) <u>EXXI's Financial Statements Are Actionable</u>

Asserting that "EXXI lacked the necessary documentation for its hedging activities to utilize hedge accounting,"[123] Plaintiffs argue that

> [a]s a result, in September 2015, shortly after EXXI's auditor was acquired, the new auditor required the Company to restate more than four years of financial statements and to make an adjustment to its accumulated deficit to eliminate the effects of cash flow hedge

_____

[123]<u>Id.</u> at 15-16 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 49-50 ¶¶ 234-35).

accounting. ¶¶ 244-45. On September 8, 2015, EXXI announced that its previously issued consolidated financial statements for the four years ended June 30, 2011, 2012, 2013, and 2014, and for the seven quarters ended September 30, 2013 and 2014, December 31, 2013 and 2014, March 31, 2014 and 2015, and June 30, 2014 — *eleven* financial statements in all — should no longer be relied upon, and would be restated. ¶ 245. The announcement stunned Plaintiffs and other EXXI investors. ¶ 247.[124]

Plaintiffs argue that

[a]s Chairman and CEO, Schiller signed all of EXXI's Annual Reports including its 2011, 2012, 2013, and 2014 Annual Reports. ¶ 21. On September 8, 2015, the Company announced that all four annual reports should not be relied upon and had to be restated to eliminate hedge accounting from them. ¶¶ 83 & 89. The Company's Annual Reports for 2012, 2013, and 2014 also included materially false or misleading information about the Company's ultra-deep drilling activities (¶¶ 124-26, 132, & 242), and the 2014 Annual Report included materially false or misleading information about EXXI's acquisition of EPL (¶¶ 172 & 174).

And *third*, Schiller is tied directly to the Company's misstatements regarding its oil and gas reserves in EXXI's annual and quarterly financial statements. As Plaintiffs allege, Schiller repeatedly pressured Company employees to include unsubstantiated estimates of natural gas reserves purportedly discovered as a result of EXXI's ultra-deep drilling program in the reserves reported in the quarterly and annual financial statements. ¶ 141. That pressure undermined the integrity of the Company's financial statements. ¶ 142.[125]

Regarding Schiller's alleged misstatements on EXXI's oil and gas reserves Plaintiffs allege:

---

[124]*Id.* at 16 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 244-45, and 247).

[125]*Id.* at 24-25 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 6 ¶ 21, pp. 18-20 ¶¶ 83 & 89, pp. 27-30 ¶¶ 124-26 & 132, pp. 31-32 ¶¶ 141-42, p. 37 ¶¶ 172 & 174, and p. 51 ¶ 242).

141. According to the former EXXI employee, Defendant Schiller pressured Company employees to include unsubstantiated estimates of natural gas reserves purportedly discovered as a result of EXXI's ultra-deep drilling program in the amount of reserves reported in the Company's quarterly and annual financial statements. This led to internal confrontations over accounting policies and practices.

142. Although the unsubstantiated estimates of natural gas reserves purportedly discovered as a result of EXXI's ultra-deep drilling program were not included in any of the Company's financial statements, the pressure from Defendant Schiller and the confrontations it led to created mistrust between the Company's internal accountants and senior management.[126]

Because Plaintiffs expressly allege that "the unsubstantiated estimates of natural gas reserves purportedly discovered as a result of EXXI's ultra-deep drilling program were not included in any of the Company's financial statements,"[127] they are not statements for which Schiller can be held liable under the Exchange Act. Schiller does not plausibly argue, however, that the financial statements he signed that were ultimately restated due to EXXI's lack of specific documentation needed to support its use of cash flow hedge accounting did not contain statements that were false and misleading. The court therefore concludes that the Plaintiffs have pled specific facts sufficient to hold Schiller liable for the financial statements that he signed and that were restated because EXXI improperly utilized cash flow hedge accounting. See Janus, 131 S. Ct. at 2302.

---

[126]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 31-32 ¶¶ 141-42.

[127]Id. ¶ 142.

(iv)  <u>Conclusions</u>

For the reasons stated above, the court concludes that the purportedly false and misleading statements that Plaintiffs allege Schiller made about EXXI's ultra-deep oil drilling activities, and EXXI's accounting for the unsuccessful EPL acquisition will not support Exchange Act claims against Schiller either because Plaintiffs have failed to allege facts capable of establishing that the statements were false when made, or that to the extent they were statements of opinion or belief, Schiller did not genuinely hold the opinions expressed, the opinions contained embedded untrue statements of fact, or Schiller omitted material facts about his inquiry or knowledge that would conflict with what a reasonable investor would have understood from his statements.  <u>See</u> <u>Omnicare</u>, 135 S. Ct. at 1327-29.  The court concludes, however, that the Plaintiffs have pled particularized facts capable of establishing Schiller's liability for false and misleading statements contained in EXXI's financial statements that Schiller signed, that were filed with the SEC, and that were restated because EXXI improperly utilized cash flow hedge accounting.  <u>See</u> <u>Janus</u>, 131 S. Ct. at 2302.

**(2)  Scienter**

Schiller argues that "the Amended Complaint should be dismissed for failure to allege any inference of scienter, much less a strong one."[128]  He argues that Plaintiffs' references to his

---

[128]Schiller's MD, Docket Entry No. 104, p. 13.

desire to maintain a lavish lifestyle, his executive position within EXXI, his signature on SEC filings that were restated, and his loans from Louie and EXXI vendors are all inadequate — individually or collectively — to raise a strong inference of scienter.[129]

Citing <u>Nathenson v. Zonagen Inc.</u>, 267 F.3d 400 (5th Cir. 2001), Plaintiffs respond that they have alleged

> several "special circumstances" that strongly support an inference of Schiller's scienter. Those circumstances include: (i) Schiller's prominence as EXXI's founder, Chairman, and CEO; (ii) the importance of the Company's ultra-deep drilling activities, its oil and gas reserves, and the EPL acquisition to EXXI's net worth and future prospects; (iii) the fact that Schiller himself made several statements regarding the Company's ultra-deep drilling, its reserves, and the EPL acquisition; (iv) Schiller's attempt to influence the Company's reserve estimates; and (v) Schiller's dependence on the market price for EXXI stock to meet his need for cash to fund his lavish lifestyle. Those circumstances — particularly Schillers' need to control the Company's disclosures to satisfy his urgent need for cash — make his scienter "at the very least, equally as compelling as any alternative inference, and **a tie favors the plaintiff.**" *Lormand*, 565 F.3d at 254 (emphasis added).[130]

Plaintiffs also point to the loans that Schiller took from Louie and from EXXI's vendors but failed to disclose to the Board or to the market as strong inferences of scienter.[131]

_____

[129]<u>Id.</u> at 13-22.  <u>See also</u> Schiller's Reply, Docket Entry No. 122, pp. 16-21.

[130]Plaintiffs' Opposition to Schiller's MD, Docket Entry No. 114, p. 27 (emphasis in original).

[131]<u>Id.</u> at 27-31.

In _Nathenson_ the Fifth Circuit held that the individual defendants' positions within the defendant pharmaceutical company enhanced the scienter allegations. Recognizing "that normally an officer's position with a company does not suffice to create an inference of scienter," _id._ at 424, the court found a number of special circumstances that taken together, sufficed to support a different result in that case: (1) the company was small and had only three-dozen full-time employees; (2) it was essentially a one-product company; and (3) the alleged misrepresentations were about the patent protection for that single product, the company's most crucial issue. _Id._ at 425.

The Fifth Circuit and other courts have been reluctant, however, to apply the limited exception recognized in _Nathenson_. _See_ _Rosenzweig_, 332 F.3d at 867-68 (rejecting the plaintiffs' argument that "the failure of Azurix's core business — water-privatization projects — supports the inference that defendants knew, or recklessly disregarded, Azurix's prospects for success" and holding that the plaintiffs must identify exactly who supplied the information or when they knew the information"); _Abrams_, 292 F.3d at 432 ("A pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company."). Instead, the Fifth Circuit has stated that only in the "rare case" will a strong inference of scienter be drawn from an officer's position in a company, and only when this factor combines with other, "special

circumstances." <u>Local 731 I.B of T. Excavators and Pavers Pension</u>
<u>Trust Fund v. Diodes, Inc.</u>, 810 F.3d 951, 959 (5th Cir. 2016). The
Fifth Circuit reiterated that such circumstances may include: (1) a
small company in which corporate executives are more likely to be
familiar with day-to-day operations; (2) transactions "critical to
the company's continued vitality"; (3) omitted information readily
apparent to the speaker; and (4) statements by the corporate officer
that are internally inconsistent. <u>Id.</u>

Plaintiffs neither allege nor argue that facts capable of
establishing any of the special circumstances recognized in
<u>Nathenson</u> or <u>Diodes</u> are present in this case. Plaintiffs'
allegations that between 2006 and 2010 EXXI completed five major
acquisitions for aggregate cash consideration of approximately $2.5
billion demonstrates that EXXI differed substantially from the
small, single product companies at issue in <u>Nathenson</u> and <u>Diodes</u>.[132]
Instead, as special circumstances capable of allowing a strong
inference of scienter to be drawn from Schiller's position with the
Company, Plaintiffs point to Schiller's prominence as EXXI's

---

[132]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 16
¶¶ 69-71. Moreover, Schiller argues without objection that EXXI
had approximately 257 employees at the time of its bankruptcy, more
than the companies falling under the <u>Nathenson</u> exception. <u>See</u>
Schiller's Reply, Docket Entry No. 122, p. 19 & n.9 ("In connection
with its bankruptcy petition, the company sought emergency relief
to pay these employees during the course of the bankruptcy. See
Ex. 3 to the Declaration of David M. Sheeren at p. 5 (disclosing
257 employees). The Court can properly take judicial notice of
that adjudicative fact. <i>Funk v. Stryker Corp.</i>, 631 F.3d 777, 783
(5th Cir. 2011)." <u>See also</u> <u>Carlton</u>, 184 F. Supp. 3d at 479 (183
employees voids the <u>Nathenson</u> exception).

founder, Chairman, and CEO known for his lavish lifestyle, the importance of EXXI's ultra-deep drilling activities, the EPL acquisition, and oil and gas reserves to EXXI's net worth and future prospects, and the allegedly false and misleading statements that Schiller made about these subjects, i.e., EXXI's ultra-deep drilling activities, EPL acquisition, and gas reserves.[133]  Since, however, for the reasons stated in § III.A.2(d)(1)(i)-(iii), above, the court has already concluded that Plaintiffs have failed to plead facts capable of establishing that Schiller's statements about EXXI's ultra-deep drilling activities, EPL acquisition, or reserves were false or misleading, Plaintiffs' attempt to infer a strong inference of scienter for and/or from making those statements misses the mark.  The only allegedly false and misleading statements that the court has found are actionable against Schiller are the financial statements included in the EXXI SEC filings that he signed and were later restated.

A defendant's signature on an SEC filing with false or misleading statements or omissions cannot by itself support a strong inference of scienter.  See Central Laborers', 497 F.3d at 555.  "[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.  The party must know that it is publishing materially false information, or the party must be severely reckless in

---

[133]Plaintiffs' Opposition to Schiller's MD, Docket Entry No. 114, p. 27.

publishing such information." <u>Lovelace</u>, 78 F.3d at 1020. <u>See also</u>
<u>ArthroCare</u>, 726 F. Supp. 2d at 716; <u>Seitel</u>, 447 F. Supp. 2d at 693.
To infer scienter from accounting errors, courts typically examine
the magnitude, pervasiveness, and repetition of the errors; the
simplicity and obviousness of the misapplied rules; and the
defendant's apparent motives for misapplying these rules. <u>See</u>
<u>ArthroCare</u>, 726 F. Supp. 2d at 721 ("[W]hen the number, size,
timing, nature, frequency, and context of the misapplication [of
accounting principles] or restatement are taken into account, the
balance of the inferences to be drawn from such allegations may
shift significantly in favor of scienter."). Although Plaintiffs
have argued that the number, size, timing, nature, frequency, and
context of the misapplication [of accounting principles] and the
restatement raise a strong inference of scienter as to Griffin,
EXXI's CFO, Plaintiffs have made no such argument as to Schiller.
Instead, Plaintiffs merely point to the loans that Schiller
borrowed from fellow board member Louie and from EXXI vendors but
did not disclose. But for the reasons stated in § III.A.2(c)(1),
above, the court has already concluded that Plaintiffs have failed
to allege any facts capable of establishing that Louie — or now
Schiller — had a duty to disclose those loans. Absent a duty to
disclose, failure to disclose is not capable of raising a strong
inference of scienter. <u>See</u> <u>Chiarella v. United States</u>, 100 S. Ct.
at 1118 ("When an allegation of fraud is based upon nondisclosure,
there can be no fraud absent a duty to speak.").

Moreover, missing from Plaintiffs' Amended Complaint are any allegations of specific facts connecting Schiller to the accounting violations that led to the restatement of EXXI's financial statements. Nor are there any allegations that Schiller engaged in insider trading or stood to benefit personally from any of the alleged accounting errors. Plaintiffs offer no facts in support of their contention that Schiller signed the financial statements at issue with scienter other than the fact that, like the senior managers of every company, he had control over the Company. See Izadjoo, 237 F. Supp. 3d at 516 (find no scienter for officers where there were no "glaring irregularities or red flags" to put them on notice of material misstatements and omissions in Sarbanes-Oxley certifications or earnings calls). Plaintiffs cannot demonstrate scienter by relying either on Schiller's position on the board, Abrams, 292 F.3d at 432, or on the fact that certain financial statements were restated. See Central Laborers, 497 F.3d at 546 (restatement of financial data, by itself, does not create a strong inference of scienter). Plaintiffs' factual allegations make it more plausible or at least as plausible to infer that when signing the SEC filings at issue Schiller negligently relied on EXXI's accountants and auditors than to infer that he knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in EXXI's financial statements. See Tellabs, 127 S. Ct. at 2510; Central Laborers, 497 F.3d at 555. See also Abrams, 292 F.3d at 433 (recognizing that accounting

problems that lead to a restatement of a company's financials can "easily arise from negligence, oversight or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action"). The court concludes therefore that Plaintiffs' factual allegations are not sufficient to raise a strong inference of scienter as to Schiller.

### (3) Loss Causation

Schiller joins in and incorporates by reference arguments made by the Director Defendants and by Louie

> that Plaintiffs failed to show that any of the alleged misstatements were followed by corrective disclosures that caused the price of the stock to drop. Plaintiffs fail to plead loss causation because they do not allege any causal connection between the supposed fraudulent conduct and their purported losses.[134]

Although they have not responded directly to Schiller's loss causation argument, Plaintiffs argue that they "have sufficiently alleged loss causation to withstand [Schiller's] motion to dismiss."[135] Citing Lormand, 565 F.3d at 256-58, and asserting that "[l]oss causation 'is subject to the pleading standard of Federal Rule of [Civil] Procedure 8(a)(2), rather than the heightened pleading requirement of Rule 9(b),"[136] Plaintiffs argue that

---

[134]Schiller's Reply, Docket Entry No. 122, p. 21. See also Schiller's MD, Docket Entry No. 104, p. 6 ("Mr. Schiller joins in all of the arguments in The Director Defendants' Motion to Dismiss and incorporates those arguments herein by reference.").

[135]Plaintiffs' Opposition to Director Defendants' MD, Docket Entry No. 115, p. 24.

[136]Id.

"[u]nder that relaxed pleading standard, [they] need only allege 'a facially "plausible"' connection between the misstatements or omissions and their loss."[137]   Citing <u>North Port Firefighters' Pension — Local Option Plan v. Temple-Inland, Inc.</u>, 936 F. Supp. 2d 722, 761 (N.D. Tex. 2013), Plaintiffs argue that they "need not plead a fact-for-fact disclosure to establish loss causation,"[138] and if the court disagrees, Plaintiffs "respectfully request the opportunity to amend their complaint to add such factual allegations in further support of loss causation."[139]

For the reasons stated in § III.A.2(c)(3), above, with respect to Louie, and in § III.A.2(e)(3), below, with respect to the Director Defendants, Plaintiffs have failed to plead loss causation with respect to Schiller.

### (4)   Conclusions as to Schiller

Because Plaintiffs have failed to allege facts capable of establishing that Schiller made an actionable misstatement or omission, with scienter, that caused the loss of which the Plaintiffs' complain, Schiller's motion to dismiss the Plaintiffs' Exchange Act claims will be granted, and those claims will be dismissed with prejudice.

---

[137]<u>Id.</u>

[138]<u>Id.</u>

[139]<u>Id.</u> at 25.

(e)  Director Defendants

The Director Defendants argue that the federal securities law and fraud claims asserted against them should be dismissed because Plaintiffs' Amended Complaint fails to plead an actionable misstatement or omission, scienter, or loss causation.  The Director Defendants also argue that Plaintiffs' Amended Complaint

> fails to the extent it asserts (1) claims against the Director Defendants based on statements attributed to unspecified "Defendants" or the Company when those Director Defendants were not on the EXXI board and (2) claims barred by the five-year statute of repose or the prohibition on holder claims.[140]

**(1)  Alleged Misstatements and Omissions**

Asserting that the Director Defendants are Feinberg, Colvin, Dunwoody, Dupré, Flannery, Griffiths, and LaChance, Plaintiffs argue that

> [a]t relevant times, each of the Director Defendants served as a director of EXXI.  In addition to serving on the Board, Defendant Colvin was Chairman of the Audit Committee and a member of the Nomination and Governance Committee.  ¶ 48.  Defendant Flannery was a member of the Audit Committee and the Nomination and Governance Committee of the Board.  ¶ 49.  Defendant Dunwoody was Chairman of the Remuneration Committee and a member of the Audit Committee.  ¶ 50.  Defendant Griffiths served on the Audit Committee and the Compensation Committee.  ¶ 51.  Defendant Feinberg was Lead Independent Director, Chairman of the Nomination and Governance Committee, a member of the Compensation Committee, and an *ex officio* member of the Audit Committee.  ¶ 52.  Defendant Dupré was Chairman of the Compensation Committee and a member of the Nomination and Governance Committee.  ¶ 53.

---

[140]Director Defendants' MD, Docket Entry No. 105, p. 11.  <u>See also</u> Reply Brief in Support of the Director Defendants' Motion to Dismiss the Amended Complaint ("Director Defendants' Reply"), Docket Entry No. 121, pp. 6-12.

By virtue of their Board positions and responsibilities, the Director Defendants were privy to and participated in the creation, development, and reporting of the Company's financial condition; they had significant personal contact and familiarity with the Company and its senior officers and their fellow directors; and they were advised of and had access to internal reports and other non-public data and information about the Company's finances, operations, and sales. ¶ 290. The Director Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false, misleading, and incomplete. *Id.*

. . . [T]he Amended Complaint more than sufficiently pleads claims under the [PSLRA], for common law fraud, and for breach of fiduciary duty against the Director Defendants. Their motion to dismiss the Amended Complaint should be denied in its entirety.[141]

Plaintiffs argue that they have plausibly alleged that the Director Defendants caused EXXI to make a series of materially misleading statements about three different matters: EXXI's ultra-deep oil drilling activities, EXXI's accounting for the unsuccessful EPL acquisition, EXXI's improper use of cash hedge accounting, and Schiller's secret loan from defendant Louie.[142] Unlike the specific statements on these issues made by or attributed to Schiller, Plaintiffs argue that the statements regarding EXXI's ultra-deep drilling activities for which they seek to hold the Director Defendants liable were not attributed to any person.[143] Citing <u>Southland</u>, 365 F.3d at 365, Plaintiffs argue that

_____

[141]Plaintiffs' Opposition to Director Defendants' MD, Docket Entry No. 115, pp. 8-10 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 11-13 ¶¶ 48-53 and p. 62 ¶ 290).

[142]<u>Id.</u> at 12-22.

[143]<u>Id.</u> at 12-13, & n.5.

"directors may be held liable for false, misleading, or incomplete statements in corporate documents that have no stated author or are not attributed to any individual if they are sufficiently linked to the document or statement in question."[144]

    (i)   <u>Statements About EXXI's Ultra-Deep Drilling Activities Are Not Actionable</u>

Plaintiffs argue that they have plausibly alleged that the Director Defendants caused EXXI to make false and misleading statements regarding EXXI's ultra-deep oil drilling activities in a November 7, 2012, Press Release regarding the McMoRan and Davy Jones well production, and in EXXI's Form 10-Q filed on February 7, 2014, for the period ended December 31, 2013.[145] Plaintiffs' allegations regarding the November 7, 2012, Press Release are quoted in § III.A.2(d)(1)(i)(A), above, and their allegations regarding the Form 10-Q filed on February 7, 2014, are quoted in § III.A.2(d)(1)(i)(D), above. For the reasons stated in those previous sections of this Memorandum Opinion and Order, the court has already concluded that Plaintiffs' Amended Complaint fails to allege facts capable of establishing that any of the statements in either the November 7, 2012, Press Release, or the February 7, 2014, Form 10-Q about which Plaintiffs complain were false or

---

[144]<u>Id.</u> at 12.

[145]<u>Id.</u> 12-13 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 28-29 ¶ 127, and 30 ¶ 136.

misleading when made. Plaintiffs' Amended Complaint similarly fails to allege facts capable of establishing that any of the statements about EXXI's ultra-deep drilling activities contained in either of these documents was attributed to, formulated, signed, adopted, or used by any of the Director Defendants as conduits to the market. Absent such allegations, the Director Defendants cannot be held liable for statements in either the November 7, 2012, Press Release, or the February 7, 2014, Form 10-Q. See Azurix, 198 F. Supp. 2d at 882 (holding that statements were "not actionable because plaintiffs have not pleaded any facts indicating that the statements were untrue"); Southland, 365 F.3d at 365 (holding that facts tying an officer or director to a statement "would include a signature on the document or particular factual allegations explaining the individual's involvement in the formulation of either the entire document, or that specific portion of the document"). Also missing from Plaintiffs' Amended Complaint are allegations of fact capable of establishing that any of the statements contained in either the November 7, 2012, Press Release, or the February 7, 2014, Form 10-Q mislead the market. Accordingly, the court concludes that the Director Defendants cannot be held liable under the Exchange Act for allegedly false and misleading statements about EXXI's ultra-deep drilling activities made in either the November 7, 2012, Press Release or the February 7, 2014, Form 10-Q.

(ii) <u>Statements About EXXI's Accounting For</u>
<u>The EPL Acquisition Are Not Actionable</u>

Asserting that after EXXI acquired EPL, EPL wrote down assets as impaired, only to have EXXI delay doing so by one quarter,[146] that in Plaintiffs' Amended Complaint they "allege in detail the sequence of accounting for the impairment charges,"[147] and that "EXXI restated financial statements that were prepared after the Company acquired EPL in June [of 2014,"[148] Plaintiffs argue that

> [t]he side-by-side comparison of EXXI's recognition of impairments in the Company's consolidated annual and quarterly financial statements with EPL's more timely recognition of them in its stand-along financial statements amply explains how and why EXXI's accounting for the assets acquired from EPL in the Company's consolidated financial statements was false, misleading, and incomplete. The adequately inform the Director Defendants of the particular misrepresentations.[149]

Citing <u>Southland</u>, 365 F.3d at 365, Plaintiffs argue that

> the Director Defendants are liable for the false, misleading, or incomplete statements in EXXI's financial statements because they are linked to them by virtue of their ability to control EXXI's financial dis-closures. . . . In particular, the Director Defendants who were members of the Audit Committee — Colvin (Chair), Flannery, Dunwoody, Griffiths, and Feinberg (*ex officio*) — are closely linked to the Company's financial statements. As members of the Audit Committee, those five Director Defendants recommended the annual appointment of the Company's auditor, reviewed the scope of the audits, reviewed the Company's accounting principles, and reviewed the Company's financial

---

[146]<u>Id.</u> at 13.

[147]<u>Id.</u>

[148]<u>Id.</u> at 14.

[149]<u>Id.</u>

statements included in the annual and quarterly reports filed with the SEC. ¶ 54. They are undoubtedly liable for the false and misleading financial statements.[150]

Plaintiffs' argument that the Director Defendants can be held liable under the Exchange Act for false or misleading statements in EXXI's financial statements because EXXI recognized impairment charges for EPL one quarter after EPL did without explaining the reason for its delayed recognition is not supported by allegations of particularized fact. Missing from Plaintiffs' Amended Complaint are allegations of facts capable of establishing the relevant accounting standards, how those standards were violated, or that any of the Director Defendants knew — or ignored glaring red flags — that EXXI's financial statements were false and misleading due to improper accounting for impairment of EPL's assets. Also missing from Plaintiffs' Amended Complaint is an allegation that any of EXXI's financial statements were restated to correct misstatements arising from a failure to properly account for the impairment of EPL's assets. Missing from Plaintiffs' Opposition to Director Defendants' MD is any argument or authority supporting their contention that a corporate parent has a duty to explain why its accounting for impairment of a subsidiary's assets differs from the subsidiary's own accounting for impairment of the same assets. See MDC Partners, 2016 WL 5794774, at *3, 9-11, 24 (dismissing § 10(b) claim that rested on allegations of how management of parent company should have tested and impaired goodwill related to

---

[150]Id. at 14-15.

subsidiary). <u>See also</u> <u>Harris</u>, 135 F. Supp. 3d at 171 ("The fact that Lead Plaintiff cannot tick and tie the loss and loss adjustment expense reported in AmTrust's consolidated financial statement to the losses its individual subsidiaries reported to insurance regulators, without more, does not plausibly allege a misstatement."). Because Plaintiffs do not allege facts capable of establishing that the Director Defendants made or caused EXXI to make any false or misleading statements about EPL and/or the impairment of its assets, or that EXXI had a duty to explain the differences between its accounting for impairment of EPL's assets and EPL's own accounting for impairment of its assets, and because Plaintiffs neither allege nor argue that any statements about EPL misled the market, the court concludes that the Director Defendants cannot be held liable under the Exchange Act for allegedly false and misleading statements about EPL and/or EXXI's accounting for impairment of EPL's assets. <u>See</u> <u>In re Azurix Corp. Securities</u> <u>Litigation</u>, 198 F. Supp. 2d at 882.

(iii) <u>EXXI's Financial Statements Are</u> <u>Actionable</u>

Plaintiffs allege that because EXXI used hedge accounting without required documentation, "EXXI was required to restate its financial statements for the fiscal years ended June 30, 2011, 2012, 2013, and 2014, and for the intermediate quarters from September 30, 2013 through March 31, 2015."[151] Plaintiffs argue

---

[151]<u>Id.</u> at 16 (citing Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 19-20 ¶ 89).

that "[t]he Director Defendants cannot dispute that those erroneous financial statements were materially false and misleading when issued."[152] Because Plaintiffs' Amended Complaint alleges that each of the Director Defendants signed the Company's annual reports filed with the SEC on Forms 10-K and 10-K/A,[153] each of them can be held liable for false and misleading statements made in those annual reports. The Director Defendants do not dispute that they signed EXXI's annual reports filed with the SEC on Forms 10-K and 10-K/A and that the annual reports for fiscal years ending June 30, 2011, 2012, 2013, and 2014 that they signed and that were ultimately restated did not contain statements that were false and misleading.[154] The court concludes, therefore, that the Plaintiffs have pled specific facts sufficient to hold the Director Defendants liable for the financial statements that they signed containing false and misleading statements resulting from EXXI's use of hedge accounting. See Janus, 131 S. Ct. at 2302 ("For purposes of Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.").

---

[152]Id.

[153]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 11-13 ¶ 46 (LaChance), ¶ 48 (Colvin), ¶ 49 (Flannery), ¶ 50 (Dunwoody), ¶ 51 (Griffiths), ¶ 52 (Feinberg), and ¶ 53 (Dupré).

[154]Id. at 11 ¶ 46.

(iv) <u>Statements About Schiller's Loans Are Not Actionable</u>

Plaintiffs allege that EXXI's Form 8-K filed with the SEC on December 15, 2014, was false and misleading because it "state[d] that there were no related party transactions between Louie and the Company or any of its subsidiaries that would require disclosure pursuant to Item 404(a) of Regulation S-K," but failed to disclose that Schiller had taken a personal loan from Louie.[155] But for the reasons stated in § III.A.2(c)(1), above, the court has already concluded that the statement in the Form 8-K about which the Plaintiffs complain was neither false nor misleading and therefore not actionable under the Exchange Act.

(v) <u>Conclusions</u>

For the reasons stated above, the court concludes that the purportedly false and misleading statements that Plaintiffs allege the Director Defendants caused EXXI to make about ultra-deep drilling activities, accounting for the impairment of EPL's assets, and Schiller's secret loan from defendant Louie will not support Exchange Act claims, but that Plaintiffs have alleged an actionable claim against the Direct Defendants for false and misleading statements contained in EXXI's financial statements that they signed, that were filed with the SEC, and that were restated because EXXI improperly utilized cash flow hedge accounting. <u>See</u> <u>Janus</u>, 131 S. Ct. at 2302.

---

[155]<u>Id.</u> at 56 ¶¶ 269-70.

### (2) Scienter

Asserting that "[t]he facts of the restatements give rise to a strong inference of scienter[, . . . as] do the facts of the related party transaction between Louie and Schiller,"[156] Plaintiffs argue that

> the Director Defendants, particularly the four directors on the Nomination and Governance Committee, were severely reckless in not discovering Louie's loan to Schiller before he joined the Board. And so, too, do the facts relating to the accounting for the EPL acquisition and EXXI's ultra-deep drilling activities. The differences in accounting for impairment in EXXI's consolidated financial statements [for] EXXI when compared to the stand-alone financial statements of its subsidiary, EPL, cannot be attributed to any "overhaul" in accounting systems. Taken together, the sum of all these misstatements and omissions of material fact easily gives rise to the requisite strong inference of scienter.[157]

Plaintiffs allege that the Director Defendants signed SEC filings that contained false and misleading statements of EXXI's financial condition because EXXI misapplied the accounting standard for documenting use of cash flow hedge accounting. But "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter. The party must know that it is publishing materially false information, or the party must be severely reckless in publishing such information." Lovelace, 78 F.3d at 1020. See also Central Laborers, 497 F.3d at 555 (recognizing that a defendant's signature

---

[156]Plaintiffs' Opposition to Director Defendants' MD, Docket Entry No. 115, p. 23.

[157]Id.

on an SEC filing with false or misleading statements or omissions cannot by itself support a strong inference of scienter). To infer scienter from accounting errors, courts typically examine the magnitude, pervasiveness, and repetition of the errors; the simplicity and obviousness of the misapplied rules; and the defendant's apparent motives for misapplying these rules. See ArthroCare, 726 F. Supp. 2d at 721. Although Plaintiffs have argued that the number, size, timing, nature, frequency, and context of the misapplication of accounting principles and the restatement raise a strong inference of scienter as to Griffin, EXXI's CFO, plaintiffs have made no such argument as to the Director Defendants. Instead, Plaintiffs merely point to the loans that Schiller borrowed from fellow Board member Louie that the Director Defendants neither discovered nor disclosed. But for the reasons stated in §§ III.A.2(c)(1) and III.A.2(d)(1)(iv), above, the court has already concluded that Plaintiffs have failed to allege any facts capable of establishing that Louie or Schiller had a duty to disclose those loans. Absent a duty to disclose, failure to disclose is not capable of raising a strong inference of scienter. See Chiarella v. United States, 100 S. Ct. at 1118 ("When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak.").

Moreover, missing from Plaintiffs' Amended Complaint are any allegations of specific facts connecting the Director Defendants to the accounting violations that led to the restatement of EXXI's

financial statements. Nor are there allegations that any of the Director Defendants engaged in insider trading or stood to benefit personally from any of the alleged accounting errors. Plaintiffs offer no facts in support of their contention that the Director Defendants signed the financial statements at issue with scienter other than the fact that, like the directors of every company, they had control over the Company. See Izadjoo, 237 F. Supp. 3d at 516 (find no scienter for officers where there were no "glaring irregularities or red flags" to put them on notice of material misstatements and omission in Sarbanes-Oxley certifications or earnings calls). Plaintiffs cannot demonstrate scienter by relying either on the Director Defendants' position on the Board or on certain board committees, Abrams, 292 F.3d at 432, or on the fact that certain financial statements were restated. See Central Laborers, 497 F.3d at 546 (restatement of financial data, by itself, does not create a strong inference of scienter). Plaintiffs' factual allegations make it more plausible or at least as plausible to infer that when signing the SEC filings at issue Schiller negligently relied on EXXI's accountants and auditors than to infer that he knowingly or recklessly disregarded the presence of glaring accounting irregularities or other red flags in EXXI's financial statements. See Tellabs, 127 S. Ct. at 2510; Central Laborers, 497 F.3d at 555. See also Abrams, 292 F.3d at 433 (recognizing that accounting problems that lead to a restatement of a company's financials can "easily arise from negligence, oversight

or simple mismanagement, none of which rise to the standard necessary to support a securities fraud action"). The court concludes therefore that Plaintiffs' factual allegations are not sufficient to raise a strong inference of scienter as to the Director Defendants.

### (3) Loss Causation

The Director Defendants argue that even if Plaintiffs could satisfy the falsity and scienter elements of their Exchange Act claims that "[a] third, independent basis compelling dismissal is Plaintiffs' failure to plead facts demonstrating loss causation — that is, 'a causal connection between the [alleged] material misrepresentation and the loss.'"[158] The Director Defendants argue that the Plaintiffs have not alleged that there was any loss associated with any of the statements or categories of statements that Plaintiffs allege were false and misleading, i.e., statements about EXXI's ultra-deep drilling activities, EPL, Schiller's loans, or EXXI's improper use of hedge accounting.[159]

---

[158]Director Defendants' MD, Docket Entry No. 105, p. 27. Defendants UHY and Schiller join the Director Defendants' argument on loss causation. See UHY's MD, Docket Entry No. 101, p. 7 & n.2 ("The arguments in the motion to dismiss of the Director Defendants are adopted for purposes of this motion to dismiss;" and n.2, "[w]ith respect to the securities fraud claim, UHY incorporates the arguments regarding group pleading, loss causation, and the statute of repose."); Schiller's MD, Docket Entry No. 104, p. 6 ("Mr. Schiller joins in all of the arguments in The Director Defendants' Motion to Dismiss and incorporates those arguments herein by reference.").

[159]Id. at 27-29.

Plaintiffs respond that they "have sufficiently alleged loss causation to withstand [the defendants'] motion[s] to dismiss."[160] Citing _inter alia_ _Lormand_, 565 F.3d at 256-58, and asserting that "[l]oss causation is subject to the pleading standard of Federal Rule of [Civil] Procedure 8(a)(2), rather than the heightened pleading requirement of Rule 9(b),"[161] Plaintiffs argue that "[u]nder that relaxed pleading standard, [they] need only allege a facially plausible connection between the misstatements or omissions and their loss."[162] Citing _North Port Firefighters'_ _Pension — Local Option Plan v. Temple-Inland, Inc._, 936 F. Supp. 2d 722, 761 (N.D. Tex. 2013), Plaintiffs argue that they "need not plead a fact-for-fact disclosure to establish loss causation,"[163] and if the court disagrees, Plaintiffs "respectfully request the opportunity to amend their complaint to add such factual allegations in further support of loss causation."[164]

Under the PSLRA Plaintiffs must prove that a defendant's act or omission alleged to have violated federal securities laws "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). Loss causation refers to a direct link

---

[160]Plaintiffs' Opposition to Director Defendants' MD, Docket Entry No. 115, p. 24.

[161]_Id._

[162]_Id._

[163]_Id._

[164]_Id._ at 25.

between the misstatement and a plaintiff's loss, and generally requires a corrective disclosure relating to the challenged representations, followed by a decline in stock price after the truth is revealed. See Spitzberg v. Houston American Energy Corp., 758 F.3d 676, & n.18 (5th Cir. 2014) (citing In re Williams Securities Litigation, 558 F.3d 1130, 1137 (10th Cir. 2009)). In Dura Pharmaceuticals, 125 S. Ct. at 1633-34, the Court held that loss causation incorporates traditional elements of proximate causation and economic loss. See Amgen, 133 S. Ct. at 1192 (confirming that loss causation continues to be an element of a claim under § 10(b)). The Fifth Circuit has held that the Rule 8(a) and 12(b)(6) plausibility pleading standard, not heightened pleading, is sufficient to plead loss causation. Lormand, 565 F.3d at 258 ("[W]e conclude that Rule 8(a)(2) requires the plaintiff to allege, in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss, including allegations of a material misrepresentation or omission, followed by the leaking out of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock and plaintiff's economic loss . . . or, as Twombly indicates, the complaint must allege enough facts to give rise to a reasonable hope or expectation that discovery will reveal evidence of the foregoing elements of loss causation." (internal citations omitted)). A court is "not authorized or required to determine

whether the plaintiff's plausible inference of loss causation is equally or more plausible than other competing inferences, as [it] must in assessing allegations of scienter under the PSLRA." Id. at 267.

In pertinent part Plaintiffs allege:

### LOSS CAUSATION/ECONOMIC LOSS

278. As alleged herein, Defendants engaged in a scheme to deceive the investing market generally, and Plaintiffs in particular, and a course of conduct that artificially inflated EXXI's stock price and operated as a fraud or deceit on purchasers of EXXI stock by misrepresenting the Company's financial and operating condition and prospects as well as known trends in its industry.

279. Once Defendants' misrepresentations and fraudulent conduct were disclosed to the market, EXXI's stock price reacted negatively as the artificial inflation was removed from it. As a result of their purchases of EXXI stock alleged herein, and their decision to refrain from selling EXXI stock alleged herein, Plaintiffs suffered significant economic losses.

280. Defendants' false and misleading statements had the intended effect and caused EXXI stock to trade at artificially inflated levels at all relevant times and caused Plaintiffs to refrain from selling EXXI stock.

281. As investors and the market became aware of EXXI's prior misstatements and omissions and that EXXI's actual financial condition and business prospects were, in fact, not as represented, EXXI's stock price reacted negatively, substantially damaging Plaintiffs.[165]

Missing from Plaintiffs' Amended Complaint are allegations that identify any corrective disclosure followed by a drop in the price of EXXI stock. Argument as to the existence of any such

---

[165]Plaintiffs' Amended Complaint, Docket Entry No. 97, p. 59 ¶¶ 278-81.

disclosures is also missing from the briefs that Plaintiffs have filed in opposition to the defendants' motions to dismiss.

Plaintiffs allege that in September of 2015 EXXI was required to restate more than four years of financial statements to eliminate the use of hedge accounting.[166] Plaintiffs allege that EXXI's financial statements for the years ending June 30, 2011, 2012, 2013, 2014, and 2015, filed with the SEC on August 26, 2011, August 9, 2012, August 21, 2013, August 28 and December 23, 2014, and September 29, 2015, were materially false and misleading because they stated that EXXI did not use hedging for speculative or trading purposes.[167] Plaintiffs allege that "[u]ntil EXXI's financial statements were corrected on September 29, 2015, the Company's publicly filed financial statements for at least the years ended[] June 30, 2011, 2012, 2013, and 2014, and for all the intervening quarters materially misstated and did not fairly and accurately present the Company's financial condition and its results of operations."[168] Plaintiffs do not allege that EXXI stock price declined as a result of the disclosure that four years of financial statements would be restated. The Director Defendants argue that Plaintiffs are unable to satisfy the requirement for pleading loss causation because EXXI's stock price actually

---

[166]Id. at 17-18 ¶ 77.

[167]Id. at 52 ¶ 249.

[168]Id. at 54 ¶ 257.

increased following disclosure in September of 2015 that certain of EXXI's financial statements would be restated and that Schiller had taken personal loans from Louie and from EXXI vendors.[169]

While the Fifth Circuit has recognized that courts can take judicial notice of historical stock prices, see Catogas, 292 F. App'x at 316, the court need not do so here because it is sufficient in considering the motions to dismiss that Plaintiffs have alleged no losses following the relevant disclosures in September of 2015. See Schott, 211 F. Supp. 3d at 946. Since Plaintiffs have not alleged that the restatements caused their losses, the court does not factor the restatements into its analysis of loss causation. Instead, Plaintiffs allege that

> EXXI's disclosure that it was required to restate its financial statements to eliminate cash flow hedge accounting was materially false and misleading because it made it appear that the reason for the restatement was a mere technical deficiency in documentation, when the true reason for the restatement was that the Company was hedging for improper purposes, including speculating on future oil and natural gas prices or manipulating reported revenue and earnings.[170]

But also missing from Plaintiffs' Amended Complaint are facts capable of establishing that EXXI's stated reason for the restatements was false, or that the stated reason for the restatements was ever the subject of a corrective disclosure that

---

[169]Director Defendants' MD, Docket Entry No. 105, pp. 28-29 (citing Exhibit 10, EXXI stock price table, Docket Entry No. 106-10).

[170]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 54-55 ¶ 259.

was followed by a decline in stock price. Accordingly, Plaintiffs have failed to plead loss causation.

At the end of their responsive briefing on the issue of loss causation, Plaintiffs request leave to amend "[t]o the extent the Court requires . . . specificity notwithstanding the general pleading requirements of Rule 8(a)(2), Plaintiffs respectfully request the opportunity to amend their complaint to add such factual allegations in further support of loss causation."[171] Federal Rule of Civil Procedure 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." "Although Rule 15[a] 'evinces a bias in favor of granting leave to amend,' it is not automatic." Matter of Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996), cert denied, 117 S. Ct. 686 (1997) (quoting Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 597 (5th Cir. 1981)). "A decision to grant leave is within the discretion of the trial court. Its discretion, however, is not broad enough to permit denial if the court lacks a substantial reason to do so." Id. (citing State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-1303 (5th Cir. 1995) (per curiam)). Generally, a district court errs in dismissing a complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend. Bazrowx v. Scott, 136 F.3d 1053, 1054 (5th Cir.) (per curiam), cert. denied, 119

---

[171]Plaintiffs' Opposition to the Director Defendants' MD, Docket Entry No. 115, p. 25.

S. Ct. 156 (1998). If, however, a complaint alleges the plaintiff's best case, there is no need for further amendment. <u>Id.</u> See also <u>Jones v. Greninger</u>, 188 F.3d 322, 327 (5th Cir. 1999) (per curiam) (dismissing plaintiff's <u>pro se</u> action because court could perceive of no viable claim plaintiff could include in an amended complaint based on the underlying facts). The Fifth Circuit has also held that in exercising its discretion, a court may consider various criteria including, <u>inter alia</u>, the failure to cure deficiencies by amendments previously allowed and futility of the proposed amendment. See <u>Whitaker v. City of Houston, Texas</u>, 963 F.2d 831, 836 (5th Cir. 1992) (citing <u>Foman v. Davis</u>, 83 S. Ct. 227, 230 (1962)). Because Plaintiffs have already had an opportunity to file an amended complaint and because the court is persuaded that Plaintiffs have pleaded their best case, the Plaintiffs' request for leave to amend will be denied.

**B.    Control Person Liability Claims**

Plaintiffs allege that the Individual Defendants are all liable as "controlling persons" of EXXI under § 20(a) of the Exchange Act. Section 20(a) imposes joint and several liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder" for securities fraud. 15 U.S.C. § 78t(a). "Control person liability is secondary only and cannot exist in the absence of a primary violation." <u>Southland</u>, 365 F.3d at 383. Because the court has concluded that the Plaintiffs' primary claims

under § 10(b) should be dismissed, the § 20(a) claims will also be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Izadjoo, 237 F. Supp. 3d at 520.

## C.  Common Law Fraud Claims

Plaintiffs assert claims for common law fraud against all of the defendants.[172]   Under Texas law a claimant alleging fraud must prove the following:

> (1) that a material representation was made; (1) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.

Aquaplex, Inc. v. Rancho La Valencia, Inc., 297 S.W.3d 768, 774 (Tex. 2009) (per curiam) (quoting In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001)).   See also Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 212-13 (5th Cir. 2009) (same). Although Plaintiffs' common law fraud claim is not subject to the heightened "strong inference" standard for pleading scienter under the PSLRA, Plaintiffs are nevertheless required to satisfy Rule 9(b), which requires them to state with particularity facts supporting each element of fraud.   See

---

[172]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 66-67 ¶¶ 313-320.  Although Plaintiffs' Amended Complaint does not specify that this claim is being asserted under Texas law, both defendants and Plaintiffs have cited and relied upon Texas law. See Director Defendants' MD, Docket Entry No. 105, pp. 31-33 and Plaintiffs' Opposition to the Director Defendants' MD, Docket Entry No. 115, p. 27.

_Benchmark Electronics, Inc. v. J.M. Huber Corp._, 343 F.3d 719, 724 (5th Cir. 2003). "'At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" _Id._ (quoting _Tel-Phonic Services, Inc. v. TBS International, Inc._, 975 F.2d 1134, 1139 (5th Cir. 1992)). In other words, the claimant must plead the who, what, when, where, and how of the fraud. _Id._

Plaintiffs' common law fraud claims rest on the same alleged misstatements underlying their Exchange Act claims and fail for the same reasons, _i.e._, Plaintiffs have not alleged facts with particularity showing that any of the defendants made false statements with scienter that caused injury. Accordingly, defendants' motions to dismiss Plaintiffs' common law fraud claims will be granted, and these claims will be dismissed.

## D. Breach of Fiduciary Duty Claims

Plaintiffs assert claims for breach of fiduciary duty against the Individual Defendants.[173] In pertinent part Plaintiffs allege that the Individual Defendants breached their fiduciary duties of care and loyalty to the Company and its shareholders, including the Plaintiffs, _inter alia_ "by making or causing the Company to make the materially false and misleading statements about the Company's

---

[173]Plaintiffs' Amended Complaint, Docket Entry No. 97, pp. 67-69 ¶¶ 321-32.

financial and operating condition and prospects alleged herein."[174]
Plaintiffs also allege that "[t]he Individual Defendants' breaches
of fiduciary duty were intertwined with the materially false and
misleading statements they made or caused the Company to make about
the Company's financial and operating condition and prospects
alleged herein."[175] Plaintiffs' breach of fiduciary duty claims
rest on the same alleged misstatements underlying their Exchange
Act claims and fail for the same reasons, i.e., Plaintiffs have not
alleged facts with particularity showing that any of the defendants
made false statements that caused injury. Accordingly, defendants'
motions to dismiss Plaintiffs' breach of fiduciary duty claims will
be granted, and these claims will be dismissed.

## IV. Conclusions and Order

For the reasons explained above, the court concludes that
Plaintiffs have failed to state claims for violations of §§ 10(b)
and 20(a) of the Securities Exchange Act of 1934 (1934 Act), 15
U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5 promulgated thereunder, 17
C.F.R. § 240.10b-5, for common law fraud, or for breach of
fiduciary duty.[176] Accordingly, UHY LLP's Motion to Dismiss (Docket

---

[174]Id. at 68 ¶ 324.

[175]Id. at 69 ¶ 329.

[176]The court has allowed the parties extraordinary leeway in
submitting lengthy briefs and other written materials in connection
with the pending motions. As the length of this Memorandum Opinion
and Order indicates, the court has expended considerable time
(continued...)

Entry No. 101) is **GRANTED**. Defendant D. West Griffin's Motion to Dismiss the Amended Complaint (Docket Entry No. 102) is **GRANTED**. Defendant Norman M.K. Louie's Motion to Dismiss the Amended Complaint (Docket Entry No. 103) is **GRANTED**. Defendant John D. Schiller, Jr.'s Motion to Dismiss the Amended Complaint (Docket Entry No. 104) is **GRANTED**. The Director Defendants' Motion to Dismiss the Amended Complaint (Docket Entry No. 105) is **GRANTED**. Plaintiffs' request for leave to amend is **DENIED**.

SIGNED at Houston, Texas, on this the 14th day of March, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[176](...continued)
reading these papers and performing a significant amount of independent research to be as fully informed as possible when addressing the parties' arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the parties should assume that failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion. Accordingly, the court strongly discourages the parties from seeking reconsideration based on arguments they have previously raised or that they could have raised.